**JUDGE SCHEINDLIN**

**13 CV 2219**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

MARK ROSENBLUM,

                                Plaintiff,

              -against-

THOMSON REUTERS (MARKETS) LLC,

                               Defendants.

------------------------------------------------------------X

Case No.

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

(RECEIVED APR 0 2013 S.D.N.Y. CASHIERS)

Plaintiff, MARK ROSENBLUM, by his attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, upon information and belief, complains as follows:

### NATURE OF THE CASE

1. Plaintiff brings this action charging that Defendants violated <u>Section 21F of the Securities Exchange Act of 1934,</u> as amended by <u>The Dodd-Frank Act</u>, 15 U.S.C. § 78u–6, et. seq. ("The Dodd-Frank Act"), seeking to recover lost wages, damages for emotional distress, punitive damages, reasonable attorney's fees and costs as a result of being retaliated against, harassed, and ultimately terminated as a result of his engaging in a "protected activity" as defined by statute.

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 15 U.S.C. §78u–6(h)(1)(b)(i) and 28 U.S.C. §§ 1331.

3. Venue is proper in this district, pursuant to 15 U.S.C. §78aa(a) and 28 U.S.C. §1391(b)(1) and (2), based upon Defendants' location within the County of New York in the State of New York, within the Southern District of New York, which is also the site of the

Defendants' acts complained of by Plaintiff.

## PARTIES

4. Plaintiff MARK ROSENBLUM ("ROSENBLUM") is a resident of the State of New Jersey.

5. At all relevant times, defendant THOMSON REUTERS (MARKETS) LLC ("THOMSON"), headquartered at 3 Times Square, New York, NY 10036, is a foreign business entity duly existing pursuant to, and by virtue of, the laws of the State of Delaware, and authorized to do business in the State of New York.

6. At all relevant times, Plaintiff ROSENBLUM was an employee of Defendant THOMSON.

## MATERIAL FACTS

7. At all relevant times, ROSENBLUM was employed by THOMSON as a Redistribution Specialist selling millions of dollars in financial data to THOMSON's customers. The purpose of this information was to assist in making investment decisions.

8. For each of the years 2008, 2009, 2010, and 2011, plaintiff was compensated at the rate of $100,000.00 per year, plus eligibility for a quarterly bonus of in excess of $25,000.00 per quarter.

9. During the year 2012, plaintiff's compensation was at the rate of $101,250.00 per year, plus eligibility for a quarterly bonus of in excess of $25,000.00 per quarter.

10. At all times, ROSENBLUM was capable of performing, and did capably perform, all tasks and obligations attendant to his employment as a Redistribution Specialist with THOMSON.

11. During the years 2010 and 2011, plaintiff's performance was so exemplary that he earned

in excess of $25,000.00 performance bonus in each quarter, increasing his compensation to more than $200,000.00 in each of those years.

12. As part of his employment with THOMSON, ROSENBLUM was engaged in transactions involving a financial product known as the Thomson Reuters/University of Michigan Surveys of Consumers (the "Product").

13. The Product is used to understand consumer attitudes and expectations about the US economy.

14. The Product gauges how consumers feel the economic environment will change.

15. The Product's Index of Consumer Expectations is an official component of the US Index of Leading Economic Indicators.

16. By an agreement between THOMSON and the non-party University of Michigan, the Product is compiled by the University of Michigan, and released by THOMSON in 3 tiers.

17. The tiered release provides a bimonthly release of information to "ultra low-latency" subscribers at 2 seconds before 9:55am, followed by "desktop" subscribers at 9:55am, followed by release to the public at 10:00am.

18. In May 2012, the Product's author from the University of Michigan and the head of America for Investment Management, Richard Curtain, came to New York and spoke to THOMSON employees about the Product.

19. On or about May 10, 2012, Richard Turner, a THOMSON employee, e-mailed THOMSON employees, stating that the Product provided "potentially market-moving information" to the "ultra low-latency" subscribers who received the Product at 2 seconds before 9:55am.

20. By releasing the Product to ultra low-latency subscribers 2 seconds early, those subscribers have a 2 second head start to make transactions based upon that information.

21. At or about this time, ROSENBLUM formed the reasonable belief that the Product's tiered distribution violated securities laws barring insider trading.

22. On June 29, 2012, ROSENBLUM disclosed to an FBI agent that THOMSON's tiered-release involving the Product, on the basis of his reasonable belief that the tiered release violated federal securities laws (the "Report").

23. Also on June 29, 2012, ROSENBLUM notified his managing director, the president, general counsel and the THOMSON employee Ethics Hotline that he had contacted federal investigators regarding the Product's tiered release.

24. Upon information and belief this early release violates the Regulation NMS which regulates how companies, such as THOMSON, share information with the public and is meant to ensure equal access to that information. The early release of this number provided an advantage to those companies which could result in inequity in the market place in violation of Regulation NMS.

25. Upon further information and belief this early release violates Section 10(b) of Rule 10b-5 which makes it unlawful to mislead investors or omit facts which could mislead investors.

26. The Report constituted a protected act under the Dodd-Frank Act.

27. On or about August 3, 2012, mere weeks after the Report, ROSENBLUM's employment with THOMSON was terminated with no severance and without compensating Plaintiff for any of his accrued vacation days.

28. Prior to the Report, ROSENBLUM's job performance was exceptional, and he routinely

received bonuses totaling more than $100,000.00 per year. ROSENBLUM executed all of his job tasks in exceptional fashion, and without complaint.

29. THOMSON embarked on a discriminatory crusade to terminate ROSENBLUM on the solely on the basis of the Report, which was a protected activity.

30. As a result of THOMSON's actions, ROSENBLUM has suffered emotional pain and suffering, humiliation, embarrassment, degradation, inconvenience, stress, anxiety, loss of sleep, loss of enjoyment of life, severe migraine headaches, loss of income, earnings, interest, and the loss of other benefits of employment.

31. THOMSON's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, ROSENBLUM demands Punitive Damages against THOMSON.

## AS A FIRST CAUSE OF ACTION
## PURSUANT TO THE DODD-FRANK ACT

32. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

33. Plaintiff provided information to assist with an investigation into Defendant's illegal actions.

34. This information was believed by Plaintiff to have been evidence of a violation of Federal laws enforceable by the SEC.

35. 15 U.S.C. § 78u-6(h)(1)(A) states in relevant part that an employer may not "discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment."

36. Defendant has retaliated against Plaintiff due to his protected activities and, as such, have

violated the law.

37. As a direct result of Defendant's actions Plaintiff has been damaged.

## INJURY AND DAMAGES

38. As a result of the acts and conduct complained of herein, ROSENBLUM has suffered and will continue to suffer the loss of a career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, physical pain and suffering, inconvenience, injury to his reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## JURY DEMAND

39. Plaintiff demands a trial by jury.

   **WHEREFORE**, Plaintiff respectfully requests a judgment against the THOMSON:

   A. Declaring that the Defendants engaged in unlawful employment practices prohibited by The Dodd-Frank Act, by terminating Plaintiff for engaging in a protected activity.

   B. Awarding damages to the Plaintiff, from the date of termination, to make him whole for any losses suffered as a result of such unlawful employment practices;

   C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

   D. Awarding Plaintiff punitive damages;

   E. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: New York, New York
April 3, 2013

                                **PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

                                _/s/ Jesse C. Rose_
                                Jesse C. Rose, Esq.
                                Of Counsel
                                30 Broad Street, 35th Floor
                                New York, NY 10004
                                (212) 248 7431
                                jrose@tpglaws.com