UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK ROSENBLUM, | No. 13 Civ. 2219 (SAS) |
| Plaintiff, | ECF Filed |
| -against- | |
| THOMSON REUTERS (MARKETS) LLC, | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS THE AMENDED COMPLAINT**

SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue, Suite 1130
New York, NY 10169
(212) 818-9200
(212) 818-9606 (fax)

*Attorneys for Defendant Thomson Reuters (Markets)
LLC*

1748563_1

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................1

FACTUAL BACKGROUND............................................................................................2

ARGUMENT ....................................................................................................................4

I.      TO BE PROTECTED UNDER THE DODD-FRANK WHISTLEBLOWER
PROVISIONS, A PERSON MUST REPORT TO THE SEC ...........................5

      A.     The Dodd-Frank Act Whistleblower Provisions......................................5

      B.     Congress Clearly Required that Only Those Reporting to the SEC are
"Whistleblowers" Under Dodd-Frank ....................................................7

      C.     As the Fifth Circuit Held in *Asadi*, There is no Conflict Between the
Definition of Whistleblower and the Whistleblower Protection Provisions...........9

      D.     The Alternate Interpretation Renders the Sarbanes-Oxley Whistleblower
Cause of Action Superfluous .................................................................12

      E.     The Clear Intent of Congress Precludes Deference to any Contrary SEC
Regulation ..............................................................................................16

II.     PUNITIVE DAMAGES ARE NOT AVAILABLE UNDER DODD-FRANK ...............20

CONCLUSION................................................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams Fruit Co. v. Barrett*,
   494 U.S. 638 (1990)...................................................................................17

*Asadi v. G.E. Energy (USA), L.L.C.*,
   720 F.3d 620 (5th Cir. 2013) ................................................... passim

*Carcieri v. Salazar*,
   555 U.S. 379 (2009)......................................................................................7

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
   467 U.S. 837 (1984)...............................................................................16, 19

*Collazos v. United States*,
   368 F.3d 190 (2d Cir. 2004)..........................................................................7

*Conn. Nat'l Bank v. Germain*,
   503 U.S. 249 (1992)......................................................................................8

*Corley v. United States*,
   556 U.S. 303 (2009)......................................................................................8

*Egan v. TradingScreen, Inc.*,
   2011 WL 1672066 (S.D.N.Y. May 4, 2011) ................................... passim

*Egan v. TradingScreen, Inc.*,
   2011 WL 4344067 (S.D.N.Y. Sept. 12, 2011)...........................................9

*Genberg v. Porter*,
   2013 WL 1222056 (D. Colo. Mar. 25, 2013) ...........................................9

*General Dynamics Land Sys. Inc. v. Cline*,
   540 U.S. 581 (2004)....................................................................................17

*Gross v. FBL Fin. Servs., Inc.*,
   557 U.S. 167 (2009)......................................................................................7

*Hardt v. Reliance Std. Life Ins. Co.*,
   560 U.S. 242, 130 S.Ct. 2149 (2010)...........................................................7

*Hedges v. Obama*,
   __ F.3d __, 2013 WL 3717774 (2d Cir. 2013) ......................................7, 8

ii

*Kar Onn Lee v. Holder,*
    701 F.3d 931 (2d Cir. 2012)................................................................8

*Kramer v. Trans-Lux Corp.,*
    2012 WL 4444820 (D. Conn. Sept. 25, 2012) ............................... passim

*Lebron v. Am. Int'l Group, Inc.,*
    2009 WL 3364039 (S.D.N.Y. 2009) ...............................................19

*Marx v. Gen. Rev. Corp.,*
    133 S.Ct. 1166 (2013) ......................................................................16

*Mary Jo C. v. N.Y. State & Local Ret. Sys.,*
    707 F.3d 144 (2d Cir. 2013)...................................................... passim

*McGuinness v. U.S. Postal Serv.,*
    744 F.2d 1318 (7th Cir. 1984) ....................................................13, 14

*Murray v. UBS Secs., LLC,*
    2013 WL 2190084 (S.D.N.Y. May 21, 2013) ............................. passim

*New York v. United States Dep't of Health & Human Servs.,*
    556 F.3d 90 (2d Cir. 2009).........................................................16, 17, 19

*Nollner v. Southern Baptist Conv., Inc.,*
    852 F. Supp. 2d 986 (M.D. Tenn. 2012)......................................9, 10

*Scott v. City of New York,*
    340 F. Supp. 2d 371 (S.D.N.Y. 2004)........................................19, 20

*Scott v. City of New York,*
    592 F. Supp. 2d 475 (S.D.N.Y. 2008)..............................................7

*United States v. Rajaratnam,*
    719 F.3d 139 (2d Cir. 2013)..............................................................3

*United States v. Robinson,*
    702 F.3d 22 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1481 (2013) ...........8

*United States v. WB/Stellar IP Owner LLC,*
    800 F. Supp. 2d 496 (S.D.N.Y. 2011), *aff'd sub nom. United States v.*
    *Glenn Gardens Assocs., L.P,* __ Fed. App'x __ (2d Cir. Aug. 21, 2013)..................8

*United States v. Williams,*
    558 F.3d 166 (2d Cir. 2009)..............................................................8

*Wagner v. Bank of America Corp.,*
    2013 WL 3786643 (D. Colo. July 19, 2013) ................................ passim

iii

**STATUTES & REGULATIONS**

18 U.S.C. § 1513(e) ...................................................................................................11, 15

18 U.S.C. 1515(a)(4) .......................................................................................................11

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203 (2010).... *passim*

Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A .......................................5, 11, 12, 17

Securities Exchange Act § 21F, 15 U.S.C. § 78u-6 ............................................... *passim*

SEC Regulation 21F, 17 C.F.R. § 240.21F-2 .........................................................15, 18

SEC Regulation NMS, 17 C.F.R. § 242.600-613 ...........................................................3

SEC Rel. No. 34-64545, 76 Fed. Reg. 34300, 34303 ..................................................18

Defendant Thomson Reuters (Markets) LLC ("Thomson") submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the amended complaint of plaintiff Mark Rosenblum for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

Mark Rosenblum, a former salesperson for Thomson, was terminated for cause in August 2012 after an internal investigation found that he had submitted falsified commission reports. Approximately eight months later, he filed the instant lawsuit under the Dodd-Frank Act, claiming that Thomson's distribution of consumer survey data constituted illegal insider trading and that he had actually been fired because he had raised concerns about these practices, including to, *inter alia*, the Federal Bureau of Investigation (FBI).

Factually, Rosenblum's claims are meritless. As noted, he was fired because of fabricated claims to commissions, not because of his reporting to the FBI (or anyone else). His claim that Thomson engaged in insider trading by selective release of the survey data is baseless, since – as his own complaint alleges – the tiered release was permitted by the express terms of the contract between Thomson and the owner of the data, the University of Michigan. This is not even to mention Rosenblum's absconding with Thomson property upon his termination and his persistent refusal to return it. In other words, plaintiff's notion as to who has been engaging in unethical or illegal behavior is precisely backwards.

But it is unnecessary for the Court to delve into such matters. Rather, this action can be disposed of by the Court's taking note of the fact that Rosenblum does not allege that he reported his concerns to the Securities and Exchange Commission (SEC), and indeed his counsel has stipulated in court that he did not do so. As the only Court of Appeals to have considered the

issue recently held – and was joined by the only district court to have considered it since – the plain language of the Dodd-Frank Act only protects "whistleblowers," defined as individuals who "provide information relating to a violation of the securities laws *to the [SEC]*."  15 U.S.C. § 78u-6(a)(6) (emphasis added); *see Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620 (5th Cir. 2013); *Wagner v. Bank of America Corp.*, 2013 WL 3786643 (D. Colo. July 19, 2013). Moreover, because Congress has made its intent clear, the SEC's possible regulatory attempt to expand the definition of "whistleblower" is, as the Fifth Circuit also held, entitled to no weight. *Asadi*, 720 F.3d at 629-30.  The Court is respectfully urged, for the reasons stated herein, to follow both *Asadi* and *Wagner*.

In short, this motion involves both a straightforward issue of statutory interpretation and the application of that statute to undisputed facts.  As outlined below in further detail, Rosenblum has not stated, and cannot state, a claim under the Dodd-Frank whistleblower protection provisions without alleging that he reported his concerns to the SEC.  There being no other claimed basis for relief, dismissal with prejudice is appropriate.

## FACTUAL BACKGROUND

Thomson Reuters (Markets) LLC, a subsidiary of Thomson Reuters Corporation, distributes financial information products to its customers.[1]  As relevant here, plaintiff Mark Rosenblum was employed by Thomson as a salesperson until his termination on or about August 3, 2012.  Compl. ¶¶ 8-9.[2]

---

[1] The Amended Complaint ("Compl.") (Dkt. # 17) alleges that "Thomson" – defined (as herein) to mean Thomson Reuters (Markets) LLC, *see* Compl. ¶ 5 – is a publicly traded company.  Compl. ¶ 7.  In fact, it is Thomson's parent, Thomson Reuters Corporation, that is publicly traded.  Thomson Reuters (Markets) LLC is an indirect wholly-owned subsidiary of Thomson Reuters Corporation.

[2] Facts cited herein are from the Amended Complaint and taken as true solely for purposes of this motion.

Among the products distributed by Thomson is the University of Michigan Consumer Survey (the "Survey"), a monthly survey of consumer expectations. *Id.* ¶¶ 17-18. Thomson receives and distributes the Survey pursuant to a contract with the University of Michigan Survey Research Center. *Id.* ¶ 24. Rosenblum alleges that he was assigned to the sales team for the Survey in May 2012, and that at that time he began to have concerns about the release schedule for the Survey data. *Id.* ¶¶ 21, 32.

Specifically, Rosenblum alleges that the Survey was released to the general public at 10:00 a.m. on a release day, to subscribers five minutes earlier (i.e., at 9:55), and to a subset of subscribers 2 seconds prior to that (i.e., at 9:54:58). *Id.* ¶ 27. Moreover, as he alleges, this tiered release is precisely according to the Thomson's contract with the owner and creator of the Survey data, the University of Michigan. *Id.* ¶ 24. Plaintiff does *not* allege (nor could he) that this tiered release schedule was hidden from the public.

Notwithstanding these facts, Rosenblum claims that he formed the belief that such tiered release – in particular, the 2-second advance – "violated SEC laws, barring insider trading." *Id.* ¶ 32.[3] Accordingly, he claims, he reported his concerns both internally at Thomson and also to contacts he knew at the FBI. *Id.* ¶ 34. He also claims that he told Thomson of his reporting to

---

[3] Though unnecessary to decide for purposes of this motion, such a claim is not only legally baseless but objectively unreasonable. Under the federal securities laws, "insider trading" requires either trading by corporate insiders – the so-called "classical theory," *United States v. Rajaratnam*, 719 F.3d 139, 158 (2d Cir. 2013) – or "misappropriation" of confidential information "in breach of a duty owed to the source of the information," *id.* There being no corporate inside information implicated by the Survey data, and the tiered release being specifically provided for in the contract with "the source of the information," there could be no reasonable belief that Thomson's actions implicated laws against insider trading.

Plaintiff also now alleges that the tiered release violates SEC Regulation NMS (though he does not allege either that he held such a belief at the time he raised concerns or that he ever communicated such a belief to anyone at Thomson). This claim has even less basis: Regulation NMS, 17 C.F.R. § 242.600-613, regulates, *inter alia*, market data (price, volume, etc.) about traded securities. It is not, as plaintiff seems to allege, a regulation of all data that might have some effect on the securities markets.

3

the FBI.  *Id.* ¶ 36.  Nowhere, however, does he allege that he reported his concerns to the SEC (or that he ever suggested to anyone at Thomson that he had done so).[4]

On or about August 3, 2012, Thomson terminated Rosenblum.  *Id.* ¶ 40.  He was informed that this termination was due to "improper attempts at gaining commissions on sales contracts that he was not entitled [sic]." *Id.* ¶ 43.  Rosenblum subsequently filed the initial complaint in this action on April 4, 2013.  Thomson answered and counterclaimed for Rosenblum's conversion of Thomson property (a laptop and Blackberry) on June 4 (and amended on June 28).  Following plaintiff's retention of new counsel, the parties stipulated to the filing of the present amended complaint, which was filed on August 20, 2013.

## **ARGUMENT**

Plaintiff's complaint asserts only one cause of action: retaliatory discharge in violation of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203 (2010) (the "Dodd-Frank Act" or the "Act") – specifically, § 922 of the Act, which created a new § 21F of the Securities Exchange Act of 1934 to provide both incentives and protection to whistleblowers. The Act, however, provides protection against retaliation only to "whistleblowers," 15 U.S.C. § 78u-6(h)(1)(A), and in *Asadi* the Fifth Circuit held that the Act's definition of "whistleblower" – any individual who provides … information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission," *id.* § 78u-6(a)(6) – means exactly what it says and thus unambiguously limits protection to only those who (unlike Rosenblum) report to the SEC.  *See Asadi*, 720 F.3d at 630 (affirming dismissal of claim); *Wagner*, 2013 WL 3786643, at *5-6 (stating that "I agree entirely" with the analysis of

---

[4] Nor was any such allegation made in the original complaint filed in this action, and, as stated, his counsel stipulated at the August 2, 2013 pretrial conference that plaintiff did not report to the SEC.

4

*Asadi*).  As demonstrated below, this conclusion is eminently correct, and the conclusions of

certain district courts to the contrary are based on a misapprehension of an internal statutory

conflict that, as *Asadi* shows, simply does not exist.  The failure of Rosenblum to take his

concerns (unfounded as they were) to the SEC is fatal to his claim under Dodd-Frank, and his

complaint should accordingly be dismissed.

## I.     TO BE PROTECTED UNDER THE DODD-FRANK WHISTLEBLOWER PROVISIONS, A PERSON MUST REPORT TO THE SEC

### A.     The Dodd-Frank Act Whistleblower Provisions

As the Court is aware, the Dodd-Frank Act was Congress's attempt to respond to the

perceived problems that led to the financial crisis beginning in 2008.  Section 922 of the Act, 124

Stat. 1841-48, entitled "Whistleblower Protection," included four provisions:

- Added a new Section 21F to the Securities Exchange Act of 1934, 15 U.S.C. § 78u-6, entitled "Securities Whistleblower Incentives and Protection," Act § 922(a);
- Extended the whistleblower protection provisions of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A ("SOX"), to employees of rating agencies, § 922(b);
- Further revised the SOX whistleblower protections by increasing the limitations period, adding a jury trial right, and prohibiting contractual waiver or arbitration of such protections, § 922(c); and
- Instructing the SEC Inspector General to study and report on the efficacy of the new whistleblower protections, § 922(d).

It is the first of these provisions that governs the claim asserted by plaintiff here (and the alleged

jurisdiction of this Court over such claim).

The new § 21F of the '34 Act, as its title implies, generally includes two provisions: (1) a

program of monetary incentives to be paid to "whistleblowers who voluntarily provided original

information to the Commission that led to the successful enforcement of [a] covered judicial or

administrative action," *see* 15 U.S.C. § 78u-6(b) through (g); and (2) "Protection of

Whistleblowers" in the form of a prohibition against retaliation against whistleblowers and

5

provisions regarding the confidentiality of any whistleblower-provided information, *see id.* § 78u-6(h).  Provisions regarding false whistleblower information, *id.* § 78u-6(i), and granting SEC regulatory authority, *id.* § 78u-6(j), are also included.

The new whistleblower section expressly defines "whistleblower" as "any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission."  15 U.S.C. § 78u-6(a)(6).  Moreover, this definition is stated to "apply" "in this section," *id.* § 78u-6(a) – i.e., throughout the new Exchange Act § 21F, 15 U.S.C. § 78u-6.  The same definition of "whistleblower" thus applies to both the incentive award and protection provisions.

The key provision in the new § 21F providing protection for whistleblowers is as follows:

**(1) Prohibition against retaliation**

**(A) In general**

No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—

(i) in providing information to the Commission in accordance with this section;

(ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or

(iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j–1(m) of this title, section 1513(e) of title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

6

15 U.S.C. § 78u-6(h)(1)(A).[5]  The Act also provides for a private right of action against

violations of the anti-retaliation provisions as well as jurisdiction in the district court for such

actions.  *Id.* § 78u-6(h)(1)(B).  It is this provision under which plaintiff purports to sue in this

action.

## B.   Congress Clearly Required that Only Those Reporting to the SEC are "Whistleblowers" Under Dodd-Frank

As with any case of statutory interpretation, the Court must "begin by analyzing the

statutory language, 'assuming that the ordinary meaning of that language accurately expresses

the legislative purpose.'"  *Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 130 S. Ct. 2149,

2156 (2010) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009)); *see Hedges v.

Obama*, __ F.3d __, 2013 WL 3717774, at *11 (2d Cir. 2013) ("As with any question of

statutory interpretation, we begin by examining the text of the statute.") (quotations omitted);

*Asadi*, 720 F.3d at 622 ("When faced with questions of statutory construction, 'we must first

determine whether the statutory text is plain and unambiguous' and, '[if] it is, we must apply the

statute according to its terms'") (quoting *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009)); *Scott v.

City of New York*, 592 F. Supp. 2d 475, 485 (S.D.N.Y. 2008) ("Statutory interpretation

'necessarily begins with the "plain meaning" of a law's text and, absent ambiguity, will generally

end there.'") (quoting *Collazos v. United States*, 368 F.3d 190, 196 (2d Cir. 2004)).

In performing this textual examination, the Court must

"consider not only the bare meaning of the critical word or phrase but also its
placement and purpose in the statutory scheme."  It is "one of the most basic
interpretive canons[ ] that a statute should be construed so that effect is given to

---

[5] The wording quoted here is taken from the United States Code, not the Act itself.  In the process of codification, the statutory references of § (h)(1)(A)(iii) were conformed to the Code – e.g., "the Securities Exchange Act of 1934" was replaced by "this chapter" (referring to Chapter 2B of Title 15).

> all its provisions, so that no part will be inoperative or superfluous, void or insignificant."

*Hedges*, 2013 WL 3717774, at *11 (quoting *Kar Onn Lee v. Holder*, 701 F.3d 931, 936 (2d Cir. 2012) and *Corley v. United States*, 556 U.S. 303, 314 (2009)); *see also United States v. Robinson*, 702 F.3d 22, 31 (2d Cir. 2012) ("Statutory interpretation is a holistic endeavor."), *cert. denied*, 133 S. Ct. 1481 (2013); *United States v. WB/Stellar IP Owner LLC*, 800 F. Supp. 2d 496, 508-09 (S.D.N.Y. 2011) ("[A] court should avoid statutory interpretations that render provisions superfluous") (quotation omitted) *aff'd sub nom. United States v. Glenn Gardens Assocs., L.P*, __ Fed. App'x __ (2d Cir. Aug. 21, 2013).

Ultimately, however,

> "in interpreting a statute a court should always turn first to one, cardinal canon before all others," namely that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete."

*Hedges*, 2013 WL 3717774, at *11 (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)); *see also WB/Stellar*, 800 F. Supp. 2d at 508 ("'A departure from the plain text of the statute is warranted only in the rare case where the anomalous result rises to a level of a patent absurdity.'") (quoting *United States v. Williams*, 558 F.3d 166, 174 (2d Cir. 2009)).

Here, it is difficult to see how Congress could have been any clearer in its meaning.  The Act's prohibition against retaliation – enforcement of which gives rise both to the whistleblower's cause of action and this Court's jurisdiction to hear such action – provides that "[n]o employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, *a whistleblower* in the terms and conditions of employment because of any lawful act done by *the whistleblower*…"  15 U.S.C. § 78u-6(h)(1)(A) (emphasis added).  Thus, as the Fifth Circuit stated, the statutory language "clearly answers" the question of

8

"who is protected," i.e., not simply any person but rather "a whistleblower." *Asadi*, 720 F.3d at 625.

Further, the Act's definition of "whistleblower" – "any individual who provides… information relating to a violation of the securities laws to the Commission," 15 U.S.C. § 78u-6(a)(6) – is expressly stated to apply to "this section," i.e., the new § 21F of the Exchange Act. There can be no disputing that this includes the antiretaliation provisions of subsection (h). *See Asadi*, 720 F.3d at 627 ("the text of § 78u-6 clearly and unambiguously provides a single definition of 'whistleblower'"); *Wagner*, 2013 WL 3786643, at *5. The plain text of the Act, therefore, limits this Court's ability to provide relief to persons who "provide information relating to a violation of the securities laws to the [SEC]." There being no claim that Rosenblum did so, he has no cause of action and his claim must be dismissed.

### C.    As the Fifth Circuit Held in *Asadi*, There is no Conflict Between the Definition of Whistleblower and the Whistleblower Protection Provisions

Prior to *Asadi*, five district courts – including two judges of this district – had reached a contrary conclusion (albeit three of them in *dicta*). *See Murray v. UBS Secs., LLC*, 2013 WL 2190084 (S.D.N.Y. May 21, 2013) (Furman, *J.*); *Egan v. TradingScreen, Inc.*, 2011 WL 1672066 (S.D.N.Y. May 4, 2011) (Sand, *J.*).[6] The gist of their holdings was a perceived conflict

---

[6] *See also Genberg v. Porter*, 2013 WL 1222056 (D. Colo. Mar. 25, 2013); *Kramer v. Trans-Lux Corp.*, 2012 WL 4444820 (D. Conn. Sept. 25, 2012); *Nollner v. Southern Baptist Conv., Inc.*, 852 F. Supp. 2d 986 (M.D. Tenn. 2012). *Egan*'s construction was dicta because ultimately Judge Sand determined that the plaintiff had not alleged that he engaged in any of the protected activities listed in 15 U.S.C. § 78u-6(h)(1)(A) (iii), and thus he had to allege that he had, individually or in concert with others, provided information to the SEC. *See* 2011 WL 1672066, at *7. In other words, Judge Sand determined that the plaintiff had to satisfy the definition of "whistleblower" in § 78u-6(a)(6). Subsequently, after plaintiff was unable to sufficiently replead that he had provided information to the SEC, Judge Sand dismissed the complaint. *See Egan v. TradingScreen, Inc.*, 2011 WL 4344067 (S.D.N.Y. Sept. 12, 2011). In *Genberg*, the court dismissed the Dodd-Frank claim because the alleged retaliatory action was actually compelled by the Bankruptcy Code, and thus could not constitute actionable retaliation. *See* 2013 WL 1222056, at *11-12. In *Nollner*, the court held that the plaintiff's reporting of

9

between the definition of "whistleblower" in § 78u-6(a)(6) and the third category of protected

activity, § 78u-6(h)(1)(A)(iii), because the statutes referenced in this third category encompass

broader activity beyond reporting only to the SEC.  *See Murray*, 2013 WL 2190084, at *4; *Egan*,

2011 WL 1672066, at *4-5.

      This same argument, however, was made by the appellant in *Asadi*, and the Fifth Circuit

rejected it.  *See* 720 F.3d at 625-28; *see also Wagner*, 2013 WL 3786643, at *6.  As the *Asadi*

court stated, the protected activity categories of § 78u-6(h)(1)(A) do not define *who* is protected,

but rather *what*, i.e., "what actions by protected individuals constitute protected activity."  720

F.3d at 625.  It is only if one reads the categories of protected activity as "additional definitions

of three types of whistleblowers" that a conflict could arise, but the "plain text of the statute does

not support" such a reading.  *Id.* at 626.  "Instead, the text of § 78u-6 clearly and unambiguously

provides a single definition of 'whistleblower.'"  *Id.* at 627.

      Nor does the application of the "whistleblower" definition to the anti-retaliation

provisions render §78u-6(h)(1)(A)(iii) superfluous, as suggested by *Egan* and *Murray*.[7]  *See*

*Egan*, 2011 WL 1672066, at *4; *Murray*, 2013 WL 2190084, at *5.  As the *Asadi* court

---

FCPA violations was not a protected activity under § 78u-6(h)(1)(A)(iii), and dismissed the complaint.  *See* 852 F. Supp. 2d at 995-98.  *Murray* and *Kramer* are the only two decisions to have actually denied a motion to dismiss a Dodd-Frank claim even though the plaintiff had not provided information to the SEC.

[7] The suggestion in *Murray* and *Egan* that application of the "whistleblower" definition of § 78u-6(a)(6) renders § 78u-6(h)(1)(A)(iii) "superfluous" is based on the argument that it "would effectively invalidate §78u-6(h)(1)(A)(iii)'s protection of whistleblower disclosures that do not require reporting to the SEC."  *See Murray*, 2013 WL 2190084, at *5.  As noted *infra* at 11, this seems to be question-begging, in that it assumes the statute protects such disclosures.  To the extent that what the courts meant to say was that it left certain activities referenced in (iii) unprotected, that is an odd definition of "superfluous."  The whistleblower definition and the list of protected activities are both required elements of a cause of action and each therefore limits the other: not all "whistleblowers" are protected (to the extent not retaliated against for a listed activity), and not all listed activities are covered (to the extent not undertaken by a whistleblower).  This ordinary interplay of elements of a cause of action does not render either element "superfluous," however.

suggested, the protected activity of (iii) still has effect because it "protects whistleblowers from retaliation, based not on the individual's disclosure of information to the SEC but, instead, on that individual's other possible required or protected disclosures." 720 F.3d at 627.[8]

There is another way that (iii) continues to have effect even while applying Congress' definition of "whistleblower." That is, each of the activities in (iii) encompasses disclosures to the SEC, even if they also encompass other disclosures.[9] The Sarbanes-Oxley Act clearly includes required or protected disclosures to the SEC, *see, e.g.*, 18 U.S.C. § 1514A(a)(1)(A) (protecting provision of information or assistance to "a Federal regulatory or law enforcement agency"), as does "this chapter," i.e., the Securities Exchange Act. The obstruction of justice statute, 18 U.S.C. § 1513(e), covers the provision of information to "a law enforcement officer," which includes the SEC, *see* 18 U.S.C. 1515(a)(4). Thus, to the extent an individual provided information to the SEC about a possible securities law violation other than the provision of original information through the "bounty" program covered by § 78u-6(h)(1)(A)(i) or (ii) – e.g., by cooperating with an SEC investigation begun on the SEC's own initiative – subsection (iii) would provide protection from retaliation.[10]

---

[8] The *Asadi* court provided the example of a manager who simultaneously reports a suspected securities law violation to the SEC and to his company's CEO, who, unaware of the report to the SEC, fires the manager for the report to the CEO. The manager would qualify as a "whistleblower" because of the report to the SEC, but would not be entitled to protection under § 78u-6(h)(1)(A)(i) or (ii), because the firing was not because of any disclosure to the SEC. The manager *would*, however, be entitled to protection under (iii), because the whistleblower protection provisions of Sarbanes-Oxley include internal reporting to management. *See* 18 U.S.C. § 1514A(a)(1)(c). *See Asadi*, 720 F.3d at 627-28.

[9] The residual phrase at the end of § 78u-6(h)(1)(A)(iii) – "and any *other* law, rule, or regulation subject to the jurisdiction of the Commission" (emphasis added) – suggests that the preceding activities are protected only to the extent they are "subject to the jurisdiction of" the SEC.

[10] As an example, suppose that a company employee was contacted by the SEC as part of an investigation, and that in the course of that investigation provided information to the SEC about potential securities violations. The company learns of her cooperation and fires her. The

11

In the end, the "conflict" perceived by the *Murray* and *Egan* courts exists only if one assumes that Congress, by including protection for activities that extended beyond reporting to the SEC, meant to protect all persons who engaged in such activities. *See Asadi*, 720 F.3d at 626 ("Conflict would exist between these statutory provisions only if we read the three categories of protected activity as additional definitions of three types of whistleblowers."). The question-begging nature of this analysis, however, should be readily apparent: it is only by assuming the answer to the very question at issue – did Congress mean to protect persons who did not report to the SEC? – that the *Murray* and *Egan* courts perceived the "conflict" that allowed them to answer that question in the affirmative. Without this assumption, however, Congress' expressed intent is clear, and no conflict or superfluousness arises that in any way brings that intent into question. Only those who report securities laws violations to the SEC are "whistleblowers," and only "whistleblowers" are entitled to protection under the Act.

**D.    The Alternate Interpretation Renders the Sarbanes-Oxley Whistleblower Cause of Action Superfluous**

The alternative construction posited by *Murray* and *Egan*, moreover, creates far more severe problems than it purports to solve. Foremost among these is that it effectively renders the whistleblower provisions of the Sarbanes-Oxley Act superfluous. *See Asadi*, 720 F.3d at 628-29. That is, if the protection provided by § 78u-6(h)(1)(A)(iii) – including "making disclosures that are required or protected under the Sarbanes-Oxley Act" – are not limited to "whistleblowers," then anyone who has a cause of action under the SOX whistleblower statute, 18 U.S.C. § 1514A, would necessarily *also* have a claim under the Dodd-Frank Act.

---

employee would meet the definition of "whistleblower" in § 78u-6(a)(6), but would not appear to have engaged in activity protected under § 78u-6(h)(1)(A)(i) or (ii), because she did not supply original information to the SEC pursuant to the "bounty" provisions (i.e., "in accordance with this section") or an investigation resulting from such information. The employee would nevertheless be protected under (iii).

But as the *Asadi* court noted, the cause of action created by Dodd-Frank is substantially more favorable to plaintiffs than under Sarbanes-Oxley.[11]  Specifically, Dodd-Frank provides for double back pay, has no administrative exhaustion requirement, and includes a vastly longer statute of limitations.  *See* 720 F.3d at 629 (comparing the two statutes).  In short, no plaintiff would likely ever employ the SOX provisions, effectively rendering them "moot."  *Id.*

As the Second Circuit recently reaffirmed, however, such a construction is highly disfavored.  In *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144 (2d Cir. 2013), the court was faced with the question of whether plaintiff, as a public employee, could file suit under Title II of the Americans with Disabilities Act (ADA), which covers discrimination in "public services," in addition to Title I, which covers employment (including public employers).  *See id.* at 166-67.  Much like here, the court noted that Title II provided more generous remedies and had less onerous exhaustion requirements than Title I, and therefore that if Title II applied to public employees, it would effectively "nullify" Title I's limits as to such employees, a construction the court found objectionable.  *See id.* at 171 ("[I]t would make no sense for Congress to provide … different sets of remedies, having different exhaustion requirements, for the same wrong committed by the same employer.") (quoting *McGuinness v. U.S. Postal Serv.*, 744 F.2d 1318, 1321 (7th Cir. 1984)).  Since courts "are required to disfavor interpretations of

---

[11] Nevertheless, the existence of the SOX whistleblower protections demonstrates that individuals who do not qualify as "whistleblowers" under Dodd-Frank because they did not report to the SEC are not left without a remedy.  Indeed, though plaintiff's claim here is meritless, his allegations, if true, would conceivably have allowed him a remedy under SOX.  That plaintiff chose not to pursue such relief – or that, perhaps, he simply did not dream up his theory of retaliatory discharge within the 90 days allotted under SOX for filing complaints with the Department of Labor – may (for him) be unfortunate, but it is a bed of his own making.

13

statutes that render language superfluous," the Court of Appeals held that Title II did not apply to employment discrimination.[12]  *Id.*

Such an interpretation is particularly problematic in this case, since the whistleblower provisions of § 922(a) of the Dodd-Frank Act are immediately followed by two subsections addressed to strengthening the Sarbanes-Oxley whistleblower remedy.  *See* Dodd-Frank Act § 922(b) (adding rating agency employees to SOX protections); *id.* § 922(c) (lengthening SOX statute of limitations, adding jury trial right, and prohibiting contractual waiver of protections). It would be more than odd for Congress, had it intended by § 922(a) to enable all SOX whistleblowers to file under the more favorable Dodd-Frank provisions, to, in the very same section, incorporate provisions strengthening the SOX protections (though still leaving them significantly less favorable than Dodd-Frank).[13]  *See Asadi*, 720 F.3d at 628 n.12.

The mooting of the SOX whistleblower statute is not the only problem with the alternative construction posited by *Murray* and *Egan*.  If any individual who engages in the activity referenced by § 78u-6(h)(1)(A)(iii) is entitled to protection, then it is difficult to see why Congress would have used the term "whistleblower" *three times* – twice in the text and once in the title to subsection (h) – rather than "employee," "individual," or "person."  The broader

---

[12] This was so even though, as the court noted, Title I of the ADA would become superfluous only "in the context of a suit against a public employer employing more than fifteen persons."  707 F.3d at 171.  Under the statutory construction suggested by *Murray* and *Egan*, however, the SOX whistleblower provision would be rendered superfluous in its entirety.

[13] In *Kramer*, the court dismissed this concern because "the Dodd-Frank Act appears to have been intended to expand upon the protections of Sarbanes-Oxley, and thus the claimed problem is no problem at all."  2012 WL 4444820, at *5; *see also Murray*, 2013 WL 2190084, at *6 (concurring with *Kramer*).  Aside from the absence of any legislative history supporting such an intent, neither court addresses (much less persuasively explains) why Congress would have provided a complete alternative cause of action while not only leaving the old statute on the books but actually amending it (though still not strengthening it to the level of the new statute).

14

construction, in other words, itself renders Congress' use of the term "whistleblower" superfluous.[14]  *See Asadi*, 720 F.3d at 626 & n.8.

Finally, the definition of "whistleblower" in § 78u-6(a)(6) incorporates not only the requirement of reporting to the SEC, but also that such reporting be of "information relating to a violation of the securities laws."  Once it is decided, however, that this definition of "whistleblower" is not applicable to the activities listed in § 78u-6(h)(1)(A)(iii), there is no other basis in the statutory text for limiting protection to disclosure of securities law violations.  Note, however, that (h)(1)(A)(iii) includes the general federal obstruction-of-justice statute, 18 U.S.C. § 1513(e), which is in no way limited to securities laws but covers retaliation against persons for providing information relating to "*any* Federal offense."  The logical conclusion of divorcing the whistleblower protections from the definition of "whistleblower" in § 78u-6(a)(6), therefore, is to create a cause of action for alleged retaliation in connection with investigations of any federal crime.  And while this may or may not be desirable, it is hardly likely that the Dodd-Frank Act was intended to do so; indeed, it is precisely the sort of "patent absurdity" that would conceivably warrant disregarding the plain language if it led to that conclusion.  Fortunately, however, the plain language does precisely the opposite.[15]

Thus, not only is the alternative construction forwarded by *Murray* and *Egan* unnecessary to avoid any superfluous language or conflict in the statute, but that construction itself also

---

[14] There is little legislative history on point, but what history there is confirms that Congress's choice of words here was deliberate.  *See Asadi*, 720 F.3d at 626 n.9.

[15] In apparent recognition of exactly this problem, the SEC regulations discussed *infra* § I.E, while removing the requirement of reporting to the SEC, nevertheless preserved the limitation to reporting of securities laws violations. *See* 17 C.F.R. § 240.21F-2(b).  The dubiousness of this move – determining that only *part* of the "whistleblower" definition in §78u-6(a)(6) should apply to the protection provisions so as to avoid the absurd results that would flow from discarding the definition altogether – is readily apparent and can hardly be considered a faithful adherence to the statutory scheme.

creates severe problems by rendering words and even whole sections of the statute superfluous and creating absurd results. It is thus entitled to no weight. *See Marx v. Gen. Rev. Corp.*, 133 S. Ct. 1166, 1177 (2013) ("[T]he canon against surplusage assists only where a competing interpretation gives effect to every clause and word of a statute.").  There is no basis to ignore the plain language Congress chose, which unambiguously requires reporting to the SEC to be considered a "whistleblower."

      **E.**    **The Clear Intent of Congress Precludes Deference to any Contrary SEC Regulation**

      Given the clear intent of Congress to limit protections to "whistleblowers" who have provided information to the SEC, reference to the SEC's arguably conflicting regulations is unwarranted, as the Fifth Circuit held.  *See Asadi*, 720 F.3d at 629-30.  As discussed below, the contrary conclusion of the courts in *Murray* and *Kramer* is inconsistent with the principles of statutory interpretation and administrative deference, and should not be followed.

      Under the framework of *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984), the deference due to an agency regulatory interpretation of a statute is analyzed in two steps.  First, the Court must determine "'whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'"  *New York v. United States Dep't of Health & Human Servs.*, 556 F.3d 90, 97 (2d Cir. 2009) (quoting *Chevron*, 467 U.S. at 842-43).  In determining this intent, the Court should employ all of the "traditional tools of statutory construction." *Mary Jo C.*, 707 F.3d at 171.  That is, the Court should first examine the statutory text; if that proves ambiguous, then the Court must "turn to canons of construction and, if that is unsuccessful, to legislative history 'to see if

16

those interpretative clues permit [the Court] to identify Congress's clear intent.'" *New York*, 556 F.3d at 97 (quoting *General Dynamics Land Sys. Inc. v. Cline*, 540 U.S. 581, 586 (2004)).

It is *only* once these "traditional tools" and "interpretative clues" have failed to reveal a clear Congressional intent that it is appropriate to move to step two, under which the Court will "defer to an agency's interpretation of the statute it administers, so long as it is reasonable." *Id.* (quotations omitted).  Moreover, such deference is only appropriate where Congress has made clear that it has delegated such interpretative authority to the agency in question.  *See Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649 (1990).

The SEC's regulations, largely governing the "bounty" provisions of § 922(a) of Dodd-Frank, include the following:

**Whistleblower status and retaliation protection.**

(a)    Definition of a whistleblower.

    (1)    You are a whistleblower if, alone or jointly with others, you provide the Commission with information pursuant to the procedures set forth in § 240.21F-9(a) of this chapter, and the information relates to a possible violation of the federal securities laws (including any rules or regulations thereunder) that has occurred, is ongoing, or is about to occur. A whistleblower must be an individual. A company or another entity is not eligible to be a whistleblower.

    (2)    To be eligible for an award, you must submit original information to the Commission in accordance with the procedures and conditions described in §§240.21F4, 240.21F-8, and 240.21F-9 of this chapter.

(b)    Prohibition against retaliation:

    (1)    For purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of the Exchange Act (15 U.S.C. 78u-6(h)(1)), you are a whistleblower if:

        (i)    You possess a reasonable belief that the information you are providing relates to a possible securities law violation (or, where applicable, to a possible violation of the provisions set forth in 18 U.S.C. 1514A(a)) that has occurred, is ongoing, or is about to occur, and;

17

> > (ii)    You provide that information in a manner described in Section 21F(h)(1)(A) of the Exchange Act (15 U.S.C. 78u-6(h)(1)(A)).
>
> The anti-retaliation protections apply whether or not you satisfy the requirements, procedures and conditions to qualify for an award.
>
> > (2)    Section 21F(h)(1) of the Exchange Act (15 U.S.C. 78u-6(h)(1)), including any rules promulgated thereunder, shall be enforceable in an action or proceeding brought by the Commission.

17 C.F.R. § 240.21F-2.

As an initial matter, though the Fifth Circuit in *Asadi* assumed that this regulation purported to extend whistleblower protection to persons who do not report to the SEC, *see* 720 F.3d at 629, it is not completely clear that this is so. Nowhere in the regulation is it expressly stated that the anti-retaliation provisions do not require reporting to the SEC. Moreover, § 240.21F-2(a) is entitled "Definition of a whistleblower" without any limitation to only the "bounty" provisions. Indeed, the regulation could be read as defining "whistleblower" generally in part (a), and then in part (b) only outlining the *additional* elements a whistleblower must satisfy to obtain protection – i.e., precisely the interpretation of the statute advanced in *Asadi*. Comments from the SEC itself also suggest this possibility. *See, e.g.*, Remarks of SEC Chairman Mary L. Schapiro on passage of final rules, May 25, 2011[16] ("[T]he final rules make clear that the statute's whistleblower protections apply to anyone *who provides us information* …") (emphasis added); SEC Rel. No. 34-64545, 76 Fed. Reg. 34300, 34303 ("We believe that requiring a 'reasonable belief' on the part of a whistleblower seeking anti-retaliation protection strikes the appropriate balance between encouraging individuals to *provide us with high-quality tips* without fear of retaliation …") (emphasis added).

---

[16] Available at http://www.sec.gov/news/speech/2011/spch052511mls-item2.htm.

18

Regardless, assuming that the regulation does purport to extend protections to those who do not report to the SEC, and assuming *Chevron* is applicable,[17] then no deference is warranted to the SEC's interpretation.  Congress *has* "directly spoken to the precise question at issue" by expressly limiting the protections of § 78u-6(h)(1)(A) to "whistleblowers" and defining that term to mean those who "provide information relating to a violation of the securities laws to the Commission," § 78u-6(a)(6).  And even if there is any ambiguity, as demonstrated *supra* §§ I.A-D, employing the "traditional tools of statutory construction" confirms that intent.  Step One of *Chevron* resolves the issue, and the Court need not (indeed, may not) proceed to Step Two.  *See Asadi*, 720 F.3d at 629-30; *see Mary Jo C.*, 707 F.3d at 172 ("Because we conclude the statute is unambiguous, we do not consider the Attorney General's regulations for this purpose.")

In *Murray*, Judge Furman deemed the first step of *Chevron* satisfied solely due to the perceived textual conflict between § 78u-6(a)(6) and (h)(1)(A)(iii), and that the plaintiff's "plausible interpretation" was sufficient to warrant moving to step two.  *See* 2013 WL 2109984, at *4-5.  However, as discussed above, *Chevron* step two is only appropriate once *all* "traditional tools of statutory construction" have been employed; a mere ambiguity in the text (even if one existed here, which it does not) is not sufficient.  *See New York*, 556 F.3d at 97.  Indeed, as this Court has previously recognized, a merely "plausible" interpretation of the text does not suffice to warrant agency deference if other tools can reveal Congressional intent.  *See Scott v. City of*

---

[17] The Dodd-Frank whistleblower provisions not only create a cause of action for retaliation, but provide for federal court jurisdiction over such action.  *See* 15 U.S.C. § 78u-6(h)(1)(B)(i).  As this Court has recognized, however, "administrative regulations purporting to regulate statutory grants of jurisdiction to district courts are not entitled to *Chevron* deference." *Lebron v. Am. Int'l Group, Inc.*, 2009 WL 3364039, at *4 (S.D.N.Y. 2009) (Department of Labor's regulation regarding plaintiff's ability to bring Sarbanes-Oxley whistleblower action was not entitled to deference).  The SEC's regulation, assuming it does not require reporting to the SEC, purports to broaden district court jurisdiction over such actions and, for claims that otherwise would have been brought pursuant to Sarbanes-Oxley, purports to allow federal courts to take jurisdiction without the necessity of the administrative exhaustion required by SOX.

19

*New York*, 340 F. Supp. 2d 371, 380 (S.D.N.Y. 2004) (holding that, while "plaintiff's reading of the statute is not implausible," Congress's contrary intent was clear, and declining to consider Department of Labor regulations).[18]   And that intent is, as demonstrated above, indeed clear.

In sum, the plain, unambiguous language of the Dodd-Frank Act limits the anti-retaliation protections to "whistleblowers" who have "provide[d] information relating to a violation of the securities laws to the Commission."   The contrary reading proffered by some district courts arises from a perceived conflict that does not exist and itself runs afoul of proper canons of statutory construction.   This Court should follow the analysis of *Asadi* and *Wagner*, and dismiss plaintiff's complaint in its entirety with prejudice.[19]

## II.   PUNITIVE DAMAGES ARE NOT AVAILABLE UNDER DODD-FRANK

As described above, the Court should dismiss plaintiff's complaint in its entirety. However, should the Court hold otherwise, at a minimum plaintiff's claim for punitive damages, Prayer for Relief § (d), must be stricken.   The whistleblower provisions of Dodd-Frank provide only for reinstatement, double back pay, and costs and fees.   There is no provision for punitive damages.   *See* 15 U.S.C. § 78u-6(h)(1)(C); *Kramer*, 2012 WL 4444820, at *7 (striking compensatory and punitive damages claims).

---

[18] Nor does the fact that other courts (and, perhaps, the SEC) have found the statute to protect those who do not report to the SEC require the Court to find the statute ambiguous.   In *Mary Jo C.*, the Second Circuit refused to defer to the Attorney General's regulations despite noting that "courts are split" and that the Eleventh Circuit had held to the contrary.   *See* 707 F.3d at 167-68; *see also Scott*, 340 F. Supp. 2d at 378 (noting conflicting court decisions).

[19] Given the stipulation of plaintiff's counsel that Rosenblum did not report to the SEC, leave to replead would be futile.

## <u>CONCLUSION</u>

For the foregoing reasons, plaintiff has not stated a claim under the Dodd-Frank

whistleblower protections because he has not alleged that he made any report to the SEC.

Accordingly, the amended complaint should be dismissed with prejudice.

Dated: New York, NY
      August 23, 2013

                      SATTERLEE STEPHENS BURKE & BURKE LLP

                      By: <u>/s/ James F. Rittinger</u>

                      James F. Rittinger
                      Glenn C. Edwards
                      Justin Klein

                      230 Park Avenue, Suite 1130
                      New York, NY 10169
                      (212) 818-9200
                      (212) 818-9606(fax)

                      *Attorneys for Defendant Thomson Reuters (Markets)*
                      *LLC*