IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MARK ROSENBLUM, | : | |
| | : | |
| Plaintiff, | : | **CASE NO: 13-CV-2219** |
| | : | |
| v. | : | |
| | : | **J. Scheindlin** |
| THOMSON REUTERS (MARKETS) LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

YOUNG LAW GROUP, P.C.
JAMES J. McELDREW, III (Of Counsel)
ERIC L. YOUNG
123 South Broad Street, Suite 1920
Philadelphia, PA 19109
(215) 367-5151
*Attorneys for Plaintiff, Mark Rosenblum*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................................... ii

PRELIMINARY STATEMENT...................................................................... 1

FACTUAL BACKGROUND............................................................................ 3

ARGUMENT...................................................................................................... 5

    **A.**    **AN INDIVIDUAL NEED NOT REPORT DIRECTLY TO THE SEC TO QUALIFY FOR THE PROTECTIONS OF THE DODD-FRANK ACT'S WHISTLBLOWER PROVISION**................................................... 6

        **i.**    **The Dodd-Frank Act Whistleblower Provisions and Relationships with other Statutes**................................................................... 6

        **ii.**   **The Statutory Language of the DFA is Arguably Ambiguous and does not Clearly Limit the Anti-Retaliation Provisions to Individuals Reporting to the SEC**........................................................... 9

        **iii.**  **There is a Clear Conflict Between the Competing Provisions of 15 U.S.C. § 78u-6(a)(6) and § 78u-6(h)(1)(A)(iii)**............................ 11

        **iv.**  **Plaintiff's Interpretation does not Render a SOX Cause of Action Superfluous**..................................................................... 12

        **v.**   **The SEC Promulgated a Rule Establishing that DFA Whistleblowers are not Required to Alert the SEC in Circumstances such as those Here**.................................................................................... 13

    **B.**    **MR. ROSENBLUM IS ENTITLED TO PROTECTIONS UNDER THE DODD-FRANK WHISTLBLOWER PROVISIONS BECAUSE HE DID, IN FACT, REPORT HIS CONCERNS TO THE SEC**.............................. 17

    **C.**    **PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES**...................... 19

CONCLUSION................................................................................................ 19

# TABLE OF AUTHORITIES

**CASES**

*Asadi v. GE Energy (USA),*
  *LLC,* No. 12-345, 2012 WL 2522599 (S.D. Tex. June 28, 2012)........................... 11

*Asadi v. G.E. Energy (USA), LLC,*
  720 F.3d 620 (5th Cir. 2013)........................................................… *passim*

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................….... 5

*Barnhart v. Sigmon Coal Co., Inc.,*
  534 U.S. 438 (2002).................................................................... 9

*Bell Atl. Com. v. Twombly,*
  550 U.S. 544 (2007)................................................................….... 5

*Carcieri v. Salazar,*
  555 U.S. 379 (2009)..................................................................... 9

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
  467 U.S. 837 (1984).............................................................…... 14, 15

*Egan v. Tradingscreen, Inc.,*
  No. 10-8202, 2011 WL 1672066 (S.D.N.Y. May 4, 2011).....................…......… *passim*

*Exxon Shipping Co. v. Baker*, 555 U.S. 471, 492-93 (2008)

*Genberg v. Porter,*
  No. 11-02434, 2013 WL 1222056 (D. Colo. Mar. 25, 2013)........................... *passim*

*Hishon v. King & Spalding,*
  467 U.S. 69 (1984)..............................................................…........ 5

*Johnson v. United States,*
  529 U.S. 694 (2000)................................................................….. 10

*Kramer v. Trans-Lux Corp.,*
  No. 11-1424, 2012 WL 4444820 (D. Conn. Sept. 25, 2012)........................…... *passim*

*Leeds v. Meltz,*
  85 F.3d 51, (2d Cir. 1996)................................................................. 5, 18

*Murray v. UBS Securities, LLC,*
  No. 12-5914, 2013 WL 2190084 (S.D.N.Y. May 21, 2013)........................... *passim*

*Nollner v. S. Baptist Convention, Inc.*,
　　852 F. Supp. 2d 986 (M.D. Tenn. 2012)..................................................... 10, 11

*Swierkiewicz v. Sorema N. A.*,
　　534 U.S. 506 (2002)............................................................................... 5

*United States v. Al Kassar*,
　　660 F.3d 108 (2d Cir. 2011)..................................................................... 9

*United States v. Anderson*,
　　15 F.3d 278 (2d Cir. 1994)....................................................................... 9

*United States v. Kozeny*,
　　541 F.3d 166 (2d Cir. 2008)..................................................................... 9

*Wagner v. Bank of America Corp.*,
　　No. 12-00381, 2013 WL 3786643 (D. Colo. July 19, 2013)................................ 11

*Wong v. CKX. Inc.*,
　　890 F. Supp. 2d 411 (S.D.N.Y. 2012)...................................................... 5, 18

## STATUTES & REGULATIONS

Claims Against the United States Government, 31 U.S.C. § 3730(b)............................. n.8

Dodd-Frank Wall Street Reform and Consumer Protection Act,
　　Pub. L. 11-203 (2010).................................................................... *passim*

FED. R. CIV. P. 12(b)(6)........................................................................ *passim*

Internal Revenue Manual, Whistleblower Awards, I.R.M. § 25.2.2.11............................ n.8

Obstruction of Justice, 18 U.S.C. § 1513(e)....................................................... 7

Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A................................................ 7, 12

Securities Exchange Act of 1934, 15 U.S.C. § 78u-6, *et seq*................................. *passim*

Securities Whistleblower Incentives and Protections, 76 Fed.Reg. 34300-01, at *34304, 2011
　　WL 2293084 (F.R.) (June 13, 2011)...................................................... 16

SEC Regulation 21F, 17 C.F.R. § 240.21F-2.................................................. *passim*

SEC Regulation 21F, 17 C.F.R. § 240.21F-7............................................ 17 n.8, 18

# I. PRELIMINARY STATEMENT

Plaintiff, Mark Rosenblum, hereby submits the following Memorandum of Law in opposition to Defendant, Thomson Reuters (Markets) LLC's, August 23, 2013, Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6).

On August 3, 2012 Defendant, Thomson Reuters (Markets) LLC (hereinafter "Defendant" or "Thomson Reuters") wrongfully terminated Plaintiff, Mark Rosenblum's employment (hereinafter "Plaintiff" or "Mr. Rosenblum"), for exercising his lawfully protected rights to report the illegal activities of his employer, pursuant to the provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 11-203, which amended the Securities Exchange Act of 1934, 15 U.S.C. § 78u-6, *et seq.* (hereinafter the collectively the "DFA"). As set forth in his First Amended Complaint (hereinafter the "FAC"), Mr. Rosenblum, through his employment, discovered extensive securities violations, including *inter alia* insider-trading, perpetrated by employees acting at the directive of Thomson Reuters. After reporting his concerns to Thomson Reuters' management on numerous occasions, Mr. Rosenblum quickly found himself on the outside looking in as Thomson Reuters dismissed his internal complaints and ultimately terminated his employment in an illegal effort to silence him. Of course, Thomson Reuters would have the Court look past its misconduct and instead focus on its preposterous claim that it fired Mr. Rosenblum for falsifying claims for commission payments.[1]

The DFA, 15 U.S.C. § 78u-6(h)(1)(B), expressly creates a cause of action for whistleblowers, such as Mr. Rosenblum, who face retaliatory harassment, discrimination, or discharge by their employers for making attempts to report their knowledge of illegal securities

---

[1] The evidence, as pled in the FAC, will clearly demonstrate that Mr. Rosenblum was a long-term, successful employee of Thomson Reuters and that Defendant's stated reasons for his termination are clearly a pretext.

violations. Defendant now moves to dismiss the FAC, premised upon the erroneous argument that in order to qualify for the protections set forth in 15 U.S.C. § 78u-6(h), an individual must report their concerns of illegality directly to the U.S. Securities and Exchange Commission (hereinafter the "SEC"). As discussed in detail, *infra*, Thomson Reuters' position is misguided and based upon a wrongly decided decision in the Fifth Circuit Court of Appeals and a decision that followed by a District Court in Colorado.

Thomson Reuters is asking this Court to adopt a narrow interpretation of who qualifies for whistleblower protections under DFA, by essentially disregarding a section of the statute, 15 U.S.C. § 78u-6(h)(1)(A)(iii), in favor of another provision, 15 U.S.C. § 78u-6(a)(6), which defines a "whistleblower" as one who reports to the SEC. This position is inconsistent with traditional principals of statutory construction, in that it renders provisions of the DFA superfluous and is contrary to the DFA's intent which was to strengthen whistleblower protections. As detailed herein, decisions from three District Courts within in the Second Circuit, *including two opinions issued in the Southern District of New York*, have wisely refused to adopt Thomson Reuters' contradictory interpretation of the DFA's whistleblower provision. Accordingly, this Court should dismiss Defendant's Motion to Dismiss the FAC.

Defendant's Motion must also fail as it runs afoul of the final rules promulgated by the SEC on this issue. In passing the DFA, Congress specifically empowered the SEC to issue rules and regulations, necessary for the successful implementation of the SEC Whistleblower Program. *See* 15 U.S.C. § 78u-6(j). On August 12, 2011, the SEC formally adopted SEC Regulation 21F, 17 C.F.R. § 240.21F-2, which directly contravenes Thomson Reuters' position and makes clear that DFA's anti-retaliation provisions are not limited to whistleblowers that report directly to the SEC. As the intent of Congress is not unambiguously clear, given the

2

seemingly competing provisions of 15 U.S.C. § 78u-6(h)(1)(A)(iii) and § 78u-6(a)(6), the SEC's adopted rules and interpretations are entitled to deference.

## II. FACTUAL BACKGROUND

Mark Rosenblum worked for Thomson Reuters from 1998 to 2000 and again from July 2005 until August 3, 2012, in several different capacities.[2]   In early 2012, Mr. Rosenblum worked as a Redistribution Specialist, tasked with the sale or "redistribution" of Thomson Reuters' financial products to other organizations. FAC ¶¶ 10-11. At or about this time, Mr. Rosenblum learned of Thomson Reuters' business relationship with the University of Michigan (hereinafter the "University"). *Id.* at ¶ 17.

Pursuant to a contractual arrangement between the organizations (hereinafter the "Agreement"), Thomson Reuters distributes the contents of the University's Consumer Survey (hereinafter the "Survey" or the "Survey Data") to third parties. *Id.* at ¶¶ 17, 24. The Survey details consumer expectations and attitudes and presents data of material significance to U.S. financial markets. *Id.* at ¶¶ 18-20. Despite the inherent hazards associated with improper early release of market moving data, such as the Survey Data, the Agreement required Defendant to release the data in a three-tiered process. FAC at ¶¶ 24-25. Pursuant to this tiered structure, the Survey Data was first released to Thomson Reuters' "ultra-low latency" subscribers at 9:54:58 am, followed by its "desktop" subscribers at 9:55:00 am, and a wide release to the general public at 10:00:00 am. *Id.* at ¶¶ 24, 27.

At this time in 2012, Mr. Rosenblum formed the objectively reasonable belief that the tiered release structure of the Agreement violated SEC regulations, including *inter alia*, those

---

[2] Plaintiff's First Amended Complaint (hereinafter the "FAC") (Dkt. No. 17). The recitations of all facts taken from the FAC are treated as undisputed, for purposes of the matter before the Court.

outlawing trading based on confidential inside information. *Id.* at ¶¶ 32-33. Perhaps more unsettling, Mr. Rosenblum also learned at this time that Thomson Reuters routinely released the Survey Data to its employees and certain high-value customers as early as 9:06:00 am. *Id.* at ¶ 30. Contrary to Defendant's self-serving pronouncements that Mr. Rosenblum's securities fraud complaints were baseless, Mr. Rosenblum was justifiably concerned that the early release of the Survey Data constituted potential securities violations, including *inter alia*, insider trading prohibitions.[3]

On or about May 1, 2012, Mr. Rosenblum, driven solely by his reasonable belief that his employer may have been running afoul of securities laws, began making earnest attempts to report the practice to his superiors. FAC at ¶ 34. However, rather than investigating and addressing Mr. Rosenblum's concerns, Thomson Reuters' representatives chose to shoot the messenger. *Id.* In response, Mr. Rosenblum reported Defendants' misconduct to the Federal Bureau of Investigation (hereinafter "FBI") and Thomson Reuters' internal Ethics Committee on

---

[3] *See e.g.,* Press Release, Office of the New York State Attorney General, *A.G. Schneiderman Secures Agreement By Thomson Reuters To Stop Offering Early Access To Market-Moving Information* (July 8, 2013), http://www.ag.ny.gov/press-release/ag-schneiderman-secures-agreement-thomson-reuters-stop-offering-early-access-market (announcing a settlement wherein Thomson Reuters agreed to cease the early release of the Survey Data, due to an investigation by the New York Attorney General's office which was buttressed by information provided to the New York Attorney General's Office by Mr. Rosenblum during a lengthy interview conducted as part of its investigation). Likewise, a number of international financial news organizations, in addition to several recognized securities law experts have reported on the perils associated with the early release of the Survey Data. *See also* Eamon Javers, *Thomson Reuters Gives Elite Traders Early Advantage*, CNBC, http://www.cnbc.com/id/100809395 (quoting former SEC Chairman Harvey Pitt on the early Survey Data Release, "I worry that there's both a fairness and a disclosure issue... If I'm paying a lot of money, I should know whether I have the best deal possible. If there was no disclosure of the tiered structure, that would be a serious problem.") ; Eamon Javers, *SEC Investigating Reuters' Early Release of ISM Data*, NBC NEWS, http://www.nbcnews.com/business/sec-investigating-reuters-early-release-ism-data-6C10472872 (reporting on an SEC investigation into Thomson Reuters' early release of *different* market data, pursuant to a contract with the Institute for Supply Management).

or about June 29, 2012. *Id.* Mr. Rosenblum promptly notified Thomson Reuters of these reporting activities and was terminated on August 3, 2012, as a direct result. *Id.* at ¶¶ 34, 36, 40.

Notably, contrary to Thomson Reuters' assertions, Mr. Rosenblum did, in fact, report his concerns regarding Thomson Reuters' illegal activities directly to the SEC, albeit after he was terminated, by properly filing a Form TCR (Tip, Complaint or Referral) on February 20, 2013 with the SEC's Office of the Whistleblower (the Affidavit of Mark Rosenblum is attached hereto as Exhibit "1").[4] The SEC confirmed receipt of the Form TCR in a letter dated March 13, 2013, to Mr. Rosenblum's former counsel (a redacted copy of the SEC confirmation letter is attached hereto as Exhibit "2"). As such, Defendant's assertions to the contrary are misplaced.

## III. ARGUMENT

A FED. R. CIV. P. 12(b)(6) motion to dismiss must be denied if a complaint, "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Com. v. Twombly*, 550 U.S. 544, 570 (2007)). According to the simplified fact-pleading standard enshrined in the Federal Rules of Civil Procedure, "'[ a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Furthermore, in ruling on a motion to dismiss, pursuant to FED. R. CIV. P. (12)(b)(6), a court must accept as true, all well plead allegations, while also drawing all reasonable inferences in the non-movant's favor. *Wong v. CKX. Inc.*, 890 F. Supp. 2d 411, 415 (S.D.N.Y. 2012); *see also Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) ("We take all well-plead factual allegations as

---

[4]Thomson Reuters asserts that Plaintiff's counsel stipulated at the August 2, 2013, pre-trial conference, that Mr. Rosenblum never reported his concerns to the SEC. This simply is not true. Plaintiff's counsel stipulated to the fact that Mr. Rosenblum did not report to the SEC prior to his termination and nothing more.

true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiffs.").

For the following reasons, the FAC states a viable claim against Thomson Reuters for the unlawful retaliatory discharge of Mr. Rosenblum. As such, Defendant's Motion to Dismiss should be denied.

## A. AN INDIVIDUAL NEED NOT REPORT DIRECTLY TO THE SEC TO QUALIFY FOR THE PROTECTIONS OF THE DODD-FRANK ACT'S WHISTLBLOWER PROVISION

### i. The Dodd-Frank Act Whistleblower Provisions and Relationships with other Statutes

While Congress passed the DFA as part of sweeping regulatory reform of the nation's financial system, the issue before the Court is a narrow one. The DFA establishes a cause of action for whistleblowers with knowledge of securities violations facing retaliatory actions, and grants original jurisdiction for such matters in the U.S. District Courts. 15 U.S.C. § 78u-6(h)(1)(B). Specifically, the DFA states:

> [n]o employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—
>
> (i) in providing information to the Commission in accordance with this section;
>
> (ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or
>
> (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j–1 (m) of this title, section 1513 (e) of title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.
>
> 15 U.S.C. § 78u-6(h)(1)(A).

As detailed in the FAC, Mr. Rosenblum qualifies as a protected DFA whistleblower, under 15 U.S.C. § 78u-6(h)(1)(A)(iii), in at least two respects[5] First, Mr. Rosenblum took great efforts to report his concerns regarding early release of the Survey Data to his superiors and ultimately Thomson Reuters' Ethics Committee. FAC at ¶ 34. This manner of internal reporting is protected under the Sarbanes-Oxley Act of 2002 (hereinafter "SOX") and thus, classifies Mr. Rosenblum as a whistleblower pursuant to DFA § 78u-6(h)(1)(A)(iii). *See* 18 U.S.C. § 1514A, for the SOX whistleblower provisions, protecting *inter alia*, internal corporate reporting; *see also Kramer v. Trans-Lux Corp.*, No. 11-1424, 2012 WL 4444820, *6-7 (D. Conn. Sept. 25, 2012) (finding plaintiff's internal reporting to his supervisor and the company ethics committee were protected disclosures under SOX and thus, protected disclosures under the DFA).

Mr. Rosenblum also qualifies as a DFA § 78u-6(h)(1)(A)(iii) whistleblower, pursuant to the statute's protections for individuals reporting under 18 U.S.C. § 1513(e). Section 1513(e) of Title 18 of the U.S.C., provides in pertinent part:

> [w]hoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, *for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense*, shall be fined under this title or imprisoned not more than 10 years, or both.

As pled, Mr. Rosenblum reported his concerns regarding Thomson Reuters securities violations to the FBI. FAC at ¶ 34. Defendant would be hard-pressed to argue that an FBI agent does not qualify as "a law enforcement officer." Thus, Mr. Rosenblum is clearly a whistleblower, pursuant to 15 U.S.C. § 78u-6(h)(1)(A)(iii), and is entitled to the protections contained therein.

---

[5] As discussed in greater detail, *infra*, Mr. Rosenblum's qualification as a "whistleblower" is buttressed by the fact that he did, contrary to Defendant's assertions, ultimately present his allegations to the SEC.

Thomson Reuters declares that the DFA should be limited to include only whistleblowers who provide, "information relating to a violation of the securities laws to the Commission, *in a manner established, by rule or regulation, by the Commission.*" 15 U.S.C. § 78u-6(a)(6) (emphasis added). According to Defendant, this language manifests Congress' express intent to limit its definition, thus precluding Mr. Rosenblum's claim. To the contrary, this language actually supports Plaintiff's position here which is that Congress intended to defer to the expertise of the SEC with respect to the ultimate issue in this case.

For example, the statute expressly charged the SEC with promulgating rules and regulations, "necessary or appropriate," for the implementation of the DFA whistleblower program. 15 U.S.C. § 78u-6(j). In accordance with this mandate, on May 25, 2011, the SEC formally adopted rules pertaining to the whistleblower program. Notably, the SEC rules expressly state:

> *[f]or purposes of the anti-retaliation protections* afforded by Section 21F(h)(1) of the Exchange Act (15 U.S.C. 78u-6(h)(1)), *you are a whistleblower if*:
>
> (i) You possess a reasonable belief that the information you are providing relates to a possible securities law violation (or, where applicable, to a possible violation of the provisions set forth in 18 U.S.C. 1514A(a)) that has occurred, is ongoing, or is about to occur, and;
>
> *(ii) You provide that information in a manner described in Section 21F(h)(1)(A) of the Exchange Act (15 U.S.C. 78u-6(h)(1)(A)).*
>
> (iii) The anti-retaliation protections apply whether or not you satisfy the requirements, procedures and conditions to qualify for an award.
>
> 17 C.F.R. § 240.21F-2 (emphasis added).

Clearly, the SEC intended, with Congressional blessing, to clarify that for anti-retaliation purposes, one need not fit the limited definition of 15 U.S.C. § 78u-6(a)(6), but rather need only satisfy the elements set forth above. Plaintiff's attempts to report internally and to the FBI classify him as a whistleblower, pursuant 15 U.S.C. § 78u-6(h)(1)(A)(iii). As such, since the facts, as pled in the FAC, taken as true, satisfy the elements of 17 C.F.R. § 240.21F-2, Defendant's Motion should be denied.

### ii. The Statutory Language of the DFA is Arguably Ambiguous and does not Clearly Limit the Anti-Retaliation Provisions to Individuals Reporting to the SEC.

Contrary to Thomson Reuters' assertions, in drafting the DFA, Congress did not limit its anti-retaliation protections to those reporting to directly to the SEC. Defendant is correct that, "in statutory construction cases, 'the first step is to determine whether the language at issue has a plain and *unambiguous* meaning with regard to the particular dispute in the case.'" *Egan v. Tradingscreen, Inc.*, No. 10-8202, 2011 WL 1672066, at *4 (S.D.N.Y. May 4, 2011) (quoting *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (internal citation omitted)). When a reviewing court finds no ambiguity in a statute, it is applied according to its plain terms. *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009).

In making such a determination, it is axiomatic that courts should, "read statutes as a whole, with no section interpreted, "'in isolation from the context of the whole Act,'" *United States v. Al Kassar*, 660 F.3d 108, 124 (2d Cir. 2011) (quoting *United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008)). Moreover, statutes must be interpreted, giving effect to every word and clause, "and to avoid statutory interpretations that render provisions superfluous." *Id.* at 124-25 (quoting *United States v. Anderson*, 15 F.3d 278, 283 (2d Cir. 1994). Finally, a court

should, "interpret statutes, 'to give effect to congressional purpose.'" *Id.* at 125 (quoting *Johnson v. United States*, 529 U.S. 694, 710 n.10 (2000)).

Despite Defendant's assertions to the contrary, there is no clear and unambiguous meaning to the term "whistleblower" as it is used throughout the pertinent sections of the DFA. In fact, the majority of courts that have undertaken a review of the central issue presently before the Court have found the statute ambiguous for a variety of reasons. *See Egan*, 2011 WL 1672066, at *4; *Kramer*, 2012 WL 4444820, *4; *Genberg v. Porter*, No. 11-02434, 2013 WL 1222056, *10 (D. Colo. Mar. 25, 2013); *Murray v. UBS Securities, LLC*, No. 12-5914, 2013 WL 2190084, at *6-7 (S.D.N.Y. May 21, 2013); *see also Nollner v. S. Baptist Convention, Inc.*, 852 F. Supp. 2d 986 (M.D. Tenn. 2012).

When considering the DFA's whistleblower provisions as a whole, it is clear that the narrow definition found in 15 U.S.C. § 78u-6(a)(6) (requiring a report to SEC) is at odds with the anti-retaliation provision 15 U.S.C. § 78u-6(h)(1)(A) (which does not). *Egan* 2011 WL 1672066, at *4 ("a literal reading of the definition of the term 'whistleblower' in 15 U.S.C. § 78u-6(a)(6), requiring reporting to the SEC, *would effectively invalidate 15 U.S.C. § 78u-6(h)(1)(A)(iii)'s protections of whistleblower disclosures that do not require reporting to the SEC.*) (emphasis added). These competing provisions necessarily create statutory ambiguity. *Murray*, 2013 WL 2190084, at * 5 (noting these competing provisions require a conclusion that the statute is ambiguous as to congress' intent). As a result, Thomson Reuters' proffered narrow interpretation would render 15 U.S.C. § 78u-6(h)(1)(A)(iii) superfluous or moot. *Genberg*, 2013 WL 1222056, at *29. *See also, Kramer,* 2012 WL 4444820, at *4 (noting that the interpretation advanced by Defendants, herein, "seems inconsistent with the goal of the Dodd-Frank Act, which was to 'improve the accountability and transparency of the financial system, and create

*"**new incentives and protections for whistleblowers**"*) (quoting *Asadi v. GE Energy (USA), LLC,*

No. 12-345, 2012 WL 2522599, at \*3 (S.D. Tex. June 28, 2012)).

Using traditional tools of statutory construction, the Court can reach but one conclusion. The competing whistleblower provisions of the DFA necessarily make the statute arguably ambiguous, rendering Defendant's position fatal, and necessitating denial of its Motion to Dismiss.

### iii. There is a Clear Conflict Between the Competing Provisions of 15 U.S.C. § 78u-6(a)(6) and § 78u-6(h)(1)(A)(iii)

Defendant wrongly asserts that 15 U.S.C. § 78u-6(a)(6) and § 78u-6(h)(1)(A)(iii) are not in conflict. Thomson Reuters' position is entirely premised upon a wrongly decided decision by the Fifth Circuit Court of Appeals and a subsequent decision in the District of Colorado. *Asadi v. G.E. Energy (USA), LLC*, 720 F.3d 620 (5th Cir. 2013) (hereinafter "*Asadi*") and *Wagner v. Bank of America Corp.*, No. 12-00381, 2013 WL 3786643 (D. Colo. July 19, 2013). In asking this Court to disregard its own precedent and to follow the Fifth Circuit, Defendant ignores the fact that the *Asadi* and *Wagner* decisions represent the minority view with regard to what constitutes and SEC Whistleblower. *See Egan*, 2011 WL 1672066, at \*4; *Kramer*, 2012 WL 4444820, \*4; *Genberg*, 2013 WL 1222056, \*29; *Murray*, 2013 WL 2190084, \*6-7; *see also Nollner v.* 852 F. Supp. 2d at 986.

Defendant's argument is premised upon the notion, adopted by the Fifth Circuit in *Asadi*, that these are not two competing definitions of "whistleblower," but rather provisions that differentiate between who is a whistleblower and what activities are protected. *Asadi*, 720 F.3d at 626. If the intent of Congress was unambiguously clear, as Defendant asserts, why entitle 15 U.S.C. § 78u-6(h)(1)(A) "Prohibition against retaliation" and not "Protected activities?" The answer is simple. Congressional intent is not clearly ascertainable considering the various

11

competing provisions of DFA. Plaintiff asserts that the court in *Egan* was correct when stating, "the contradictory provisions of the Dodd-Frank Act are best harmonized by reading 15 U.S.C. § 78u-6(h)(1)(A)(iii)'s protection of certain whistleblower disclosures not requiring reporting to the SEC as a ***narrow exception*** to 15 U.S.C. § 78u-6(a)(6)'s definition of a whistleblower as one who reports to the SEC." *Egan*, 2011 WL 1672066, at *5 (emphasis added).

As detailed *supra*, Section III.A.ii., there is clear conflict between 15 U.S.C. § 78u-6(a)(6), which purports to limit DFA "whistleblowers" to those that report to the SEC and § 78u-6(h)(1)(A)(iii), which has no such requirement. 15 U.S.C. § 78u-6(h)(1)(A)(iii) specifically aims to protect individuals that report under SOX and those that report to federal law enforcement officials. Thomson Reuters' narrow definition of "whistleblower" would leave individuals who contact law enforcement authorities other than the SEC completely without protection from retaliation under the DFA. Such a harsh and narrow reading of the statute appears to be contrary to Congressional intent and should not be afforded any weight by this Court. *See Kramer*, 2012 WL 4444820, at *4.

### iv. Plaintiff's Interpretation does not Render a SOX Cause of Action Superfluous

Defendant takes issue with the notion that by not requiring whistleblowers to report to the SEC, the DFA provisions will essentially circumvent the SOX whistleblower statute, 18 U.S.C. § 1514A. For instance, Defendant cites *Asadi* and points out that "Dodd-Frank provides for double back pay, has no administrative exhaustion requirement, and includes a vastly longer statute of limitations."[6] Defendant's position is misguided in several respects.

---

[6] Def.'s Memorandum of Law in Support of Motion to Dismiss (hereinafter "Def.'s MTD"), at 13.

First, Defendant's position ignores the fact that the DFA whistleblower provisions were enacted to overcome perceived shortcomings with the SOX provisions. *See Kramer*, 2012 WL 4444820, at *5 (noting that DFA whistleblower protection, "appears to have been intended to **expand upon the protections of Sarbanes-Oxley**") (emphasis added). Similarly, when responding to an argument that the SEC's interpretation will render SOX moot, by offering a longer statute of limitations and "more generous" protections, the court in *Murray* noted that considering the DFA's intent to strengthen the SOX provisions, "the claimed problem... is no problem at all." *Murray*, 2013 WL 2190084, at *6 (quoting *Kramer*, 2012 WL 4444820, at *5).

Next, Defendant argues that Congress cannot have intended to simultaneously strengthen SOX's whistleblower protections, while also allowing SOX whistleblowers to file under the DFA by availing themselves of the "expanded" definition of whistleblower. *See Asadi*, 720 F.3d 628 n. 12. As detailed above, Congress enacted the DFA to, *inter alia,* strengthen the SOX whistleblower provisions while expanding them to cover new ground. *See Kramer*, 2012 WL 4444820, at *5; *Murray*, 2013 WL 2190084, at *6. These two goals are not mutually exclusive and any perceived similarity should be viewed as evidence of Congress' intent to strengthen whistleblower protections, not to limit the definition of "whistleblower" under DFA.

As detailed herein, any perceived ambiguity regarding Congress' intent in passing the DFA whistleblower provisions is precisely the reason why the SEC promulgated its final rules and regulation as a means of clarification. Accordingly, Defendant's Motion to Dismiss must be denied.

###### v. The SEC Promulgated a Rule Establishing that DFA Whistleblowers are not Required to Alert the SEC In Circumstances such as those Here.

Congress explicitly granted the SEC the authority to promulgate rules and regulations for effective implementation of the DFA whistleblower program. *See* 15 U.S.C. § 78u-6(j). Pursuant to this mandate and likely as a perceived need to address the competing inferences of 15 U.S.C. § 78u-6(a)(6) and § 78u-6(h)(1)(A)(iii), the SEC issued a final rule on May 25, 2011, stating:

> *[f]or purposes of the anti-retaliation protections* afforded by Section 21F(h)(1) of the Exchange Act (15 U.S.C. 78u-6(h)(1)), *you are a whistleblower if:*
>
> (i) You possess a reasonable belief that the information you are providing relates to a possible securities law violation (or, where applicable, to a possible violation of the provisions set forth in 18 U.S.C. 1514A(a)) that has occurred, is ongoing, or is about to occur, and;
>
> *(ii) You provide that information in a manner described in Section 21F(h)(1)(A) of the Exchange Act (15 U.S.C. 78u-6(h)(1)(A)).*
>
> (iii) The anti-retaliation protections apply whether or not you satisfy the requirements, procedures and conditions to qualify for an award.
>
> 17 C.F.R. § 240.21F-2 (emphasis added).

In light of the fact that Congress' intent is arguably ambiguous with respect to whether a DFA whistleblower must affirmatively report the complained of misconduct directly to the SEC, the SEC's official rule is entitled to deference.

The two-step test established by the U.S. Supreme Court in *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.* determines the deference afforded to a regulatory agency's interpretation of a statute:

> First, always, is the question whether Congress has directly spoken
> to the precise question at issue. If the intent of Congress is clear,
> that is the end of the matter; for the court, as well as the agency,
> must give effect to the unambiguously expressed intent of
> Congress. If, however, the court determines Congress has not
> directly addressed the precise question at issue, the court does not
> simply impose its own construction on the statute, as would be
> necessary in the absence of an administrative interpretation. Rather,
> ***if the statute is silent or ambiguous with respect to the specific
> issue, the question for the court is whether the agency's answer is
> based on a permissible construction of the statute.***

467 U.S. 837, 842-43 (1984) (emphasis added)

While citing the Fifth Circuit's decision in *Asadi*, Defendant urges this Court to look past

the above-referenced SEC rule by arguing that Congressional intent is unambiguous. Plaintiff

respectfully submits that the Fifth Circuit wrongly decided *Asadi*, and that this Court should

follow the decisions of District Courts within the Second Circuit by finding that Congress' intent

is arguably unclear and that the SEC's position should matter. *Kramer*, 2012 WL 4444820, *3-5

(finding plaintiff's internal reporting, pursuant to *SOX*, warranted DFA whistleblower

protections, despite the failure to report to the SEC, in part because DFA is not unambiguously

clear that the provision only applies to such individuals); *Murray*, 2013 WL 2190084, at *4

(noting, "the ambiguity arises from the tensions between Section 78u-6(a)(6), which limits the

definition of "whistleblower" to one who makes a disclosure to the SEC, and Section 78u-

6(h)(1)(A)(iii), which contemplates a broader scope of protection"). As congressional intent is

not clearly ascertainable, the first step of *Chevron* is satisfied.

Moving to the second prong of *Chevron*, the Court need only determine that 17 C.F.R. §

240.21F-2, the SEC's interpretation of the DFA whistleblower program, is a permissible

construction of the law and thus entitled to deference. 467 U.S. at 842-43. Defendant argues

that the SEC's promulgated rule is entitled to no deference, on the misguided concept that the

DFA whistleblower provisions are unambiguous. As recognized by this Court in *Egan* and *Murray*, Defendant's position is baseless. *Murray*, 2013 WL 2190084, at *6-7; *Egan*, 2011 WL 1672066, *4-5. In the face of such ambiguities, administrative agencies, such as the SEC, routinely promulgate rules and regulations to fill the gaps left in a statute, either implicitly or explicitly by Congress. *Id.* at 843. Courts have long given considerable weight to an administrative agency's interpretation of a statutory scheme which it oversees and administers. *Id.* at 844. Given the DFA's apparent inconsistencies, Plaintiff asserts that the SEC's attempt to resolve such is entitled to deference.

The court in *Murray*, determining that its interpretation was permissible, noted that the SEC final rule, "reflects the fact that the statutory anti-retaliation protections apply to three different categories of whistleblowers, ***and the third category includes individuals who report to persons or governmental authorities other than the Commission.***" *Murray*, 2013 WL 2190084, at *7 (quoting SEC Comments to Final Rule, Securities Whistleblower Incentives and Protections, 76 Fed.Reg. 34300-01, at *34304, 2011 WL 2293084 (F.R.) (June 13, 2011)). Furthermore, the court in *Murray* noted that the, "SEC's rule clarifies an unclear statutory scheme the SEC was charged with enforcing and reflects the considerable experience and expertise that the agency has acquired over time with respect to interpretation and enforcement of the securities laws." *Murray*, 2013 WL 2190084, at *7. Plaintiff urges this Court to employ the rationale utilized in *Murray* to determine that 17 C.F.R. § 240.21F-2 is a permissible construction of the law and entitled to deference; thus obviating the perceived requirement that a whistleblower need report to the SEC to receive statutory protections.[7] As the SEC's final

---

[7] While ultimately determining that it was not entitled to deference, even the court in *Asadi* conceded that the SEC in promulgating 17 C.F.R. § 240.21F-2, intended to define

rulemaking is entitled to substantial deference, this Court should deny Defendant's Motion to Dismiss.

### B.  MR. ROSENBLUM IS ENTITLED TO PROTECTIONS UNDER THE DODD-FRANK WHISTLBLOWER PROVISIONS BECAUSE HE DID, IN FACT, REPORT HIS CONCERNS TO THE SEC

Assuming *arguendo* that an individual must report to the SEC to qualify as a whistleblower under the DFA, Mr. Rosenblum nonetheless satisfies this requirement.  The instant matter differs greatly, in one critical respect, from all of the cases in which the issue has been considered.  Namely, Mr. Rosenblum did in fact report his concerns regarding Thomson Reuters' securities violations to the SEC on February 20, 2013.  *See* Exhibit "1."

TCR submissions, like other types of whistleblower actions (i.e. False Claims Act *qui tam* complaints and claims with the IRS Whistleblower Office), are done confidentially.[8] The omission of this fact from prior pleadings was done pursuant to the strict policy of confidence embodied by the regulations enacting and structuring the SEC's whistleblower program.  The only reason Mr. Rosenblum now seeks to disclose this information is that Thomson Reuters has placed the fact squarely at issue.[9]

Mr. Rosenblum reported his concerns to the SEC by filing a TCR on February 20, 2013, albeit after his termination.  Thomson Reuters, however, terminated Mr. Rosenblum's

---

"whistleblower *more broadly for the prohibition against retaliation* than it does for eligibility for an award." *Asadi*, 720 F.3d at 629 (emphasis added).

[8] *See* 17 C.F.R. § 240.21F-7, which details the confidentiality of submissions to the SEC's Office of the Whistleblower. *See also* 31 U.S.C. § 3730(b) (detailing the seal provisions of the False Claims Act); I.R.M. § 25.2.2.11(detailing the confidentiality of claims filed with the IRS's Whistleblower Office).

[9] Def.'s MTD, n.4.  Thomson Reuters erroneously asserts in its Motion that counsel for Mr. Rosenblum stipulated at an August 2, 2013, pre-trial conference, that Mr. Rosenblum never reported his concerns to the SEC.  However, this assertion is a complete and utter falsehood.  In fact, counsel for Plaintiff stipulated that Mr. Rosenblum did not report to the SEC, prior to his termination.

employment in retaliation for his whistleblowing activities *in general*. As detailed in the FAC, Mr. Rosenblum's made continual attempts to report Thomson Reuters' securities violations, both internally and externally. Mr. Rosenblum first made vigorous attempts to voice his concerns with superiors at Thomson Reuters. FAC at ¶ 34. Faced with inaction and outright hostility, Mr. Rosenblum reported to the FBI and Thomson Reuters' Ethics Committee. *Id.* Mr. Rosenblum was interviewed extensively by the New York Attorney General's Office, pursuant to its own investigation into Thomson Reuters' early release of the Survey Data.[10] All of these events led up to Mr. Rosenblum's eventual TCR filing.

The filing of a TCR was simply one step in Mr. Rosenblum's ongoing whistleblowing activities. When a whistleblower, such as Mr. Rosenblum, is determined to report wrongdoing, he or she typically does not stop at their first rebuffed attempt. The process of whistleblowing is often multifaceted, with multiple steps over a prolonged period. The timing of Mr. Rosenblum's TCR filing does not lessen the veracity of his claims of unlawful retaliation.

It is clear that, in ruling on a motion to dismiss, pursuant to FED. R. CIV. P. (12)(b)(6), a court must accept as true, all well plead allegations, ***while also drawing all reasonable inferences in the non-movant's favor***. *Wong v. CKX. Inc.*, 2012 WL 3893609 at *1 (S.D.N.Y. Sept. 10, 2012) (emphasis added); *see also Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) ("We take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiffs."). While the FAC does not expressly detail Mr. Rosenblum's submission to the SEC, it also does not expressly state to the contrary. Plaintiff asserts that given the secrecy and confidentiality surrounding the submission of an SEC Form TCR, as enshrined in 17 C.F.R. § 240.21F-7, his otherwise well pled facts taken in conjunction

---

[10] *Supra* n. 3.

with Exhibit "1," and most importantly the court's granting of all reasonable inferences in his favor, Defendant's motion must fail.

## C.    PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES

Given the egregious nature of Thomson Reuters' behavior, Plaintiff asserts that punitive damages are warranted, to serve a deterrent effect. *See Exxon Shipping Co. v. Baker*, 555 U.S. 471, 492-93 (2008) (noting that punitive damages today are aimed "principally at retribution and deterring harmful conduct."). It is true that the court in *Kramer* found to the contrary, by examining the express language of 15 U.S.C. § 78u-6(h)(1)(C). *Kramer*, 2012 WL 4444820, *7. Plaintiff argues, however, that such an approach is short-sighted given the continued havoc reaped upon the nation's financial system by companies, such as Defendant.

Plaintiff submits that the court in *Kramer* wrongfully decided this issue. The applicable provision of 15 U.S.C. § 78u-6 is mute as to punitive damage awards to whistleblowers who faced retaliatory action. Accordingly, Plaintiff respectfully requests this Court to apply the federal common law in determining that punitive damages are applicable in this matter for purposes of deterrence and retribution discussed in *Exxon Shipping*. *Exxon Shipping Co.*, 555 U.S. at 492-93.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff, Mark Rosenblum, respectfully requests the Court issue an Order, denying Defendant, Thomson Reuters (Markets) LLC's Motion to Dismiss, or in the alternative grant leave to file an amended complaint to include the information detailed in Exhibit "1."

Respectfully Submitted,

YOUNG LAW GROUP, P.C.

Dated:_____

JAMES J. McELDREW, III (of counsel)
ERIC L. YOUNG
123 South Broad Street, Suite 1920
Philadelphia, PA 19109
(215) 367-5151
jim@mceldrewlaw.com

20