USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/25/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

MARK ROSENBLUM,

Plaintiff,

- against -

THOMSON REUTERS (MARKETS) LLC,

Defendant.

---------------------------------------------------X

**OPINION AND ORDER**

13 Civ. 2219 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

Mark Rosenblum brings this action against his former employer, Thomson Reuters ("Thomson") for violating Section 21F of the Securities and Exchange Act of 1934 (the "34 Act") as amended by The Dodd Frank Act, 15 U.S.C. §78u-6, et seq. ("The Dodd Frank Act" or "DFA"). Rosenblum seeks to recover damages "as a result of being retaliated against, harassed, and ultimately terminated as a result of his actions in a 'protected activity' as defined by The Dodd Frank Act."[1] Thomson now moves to dismiss the claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons stated below, the motion is denied.

---

[1] Complaint ("Compl.") ¶ 1.

## II. BACKGROUND[2]

### A. Thomson's Product

Rosenblum was employed by Thomson from 1998 to 2000 and from July 2005 until August 2012 as a "Redistribution Specialist" to assist the sales team in closing redistribution contracts.[3] The majority of Rosemblum's work was with "Thomson's financial products to firms that are not directly involved in managing money i.e., YAHOO, Finance, MSN.com, CNBC, Fox Business."[4] In January 2012, Rosenblum learned about Thomson's new product "Thomson University of Michigan Survey of Consumers" ("the Product"). The Product "gauges consumers' attitudes and expectations about the U.S. economy and the public's attitude about future changes of economic expectation."[5]

The University of Michigan, which compiled the data for the Product, entered into the following contract allowing Thomson to release the gathered information in three tiers:

---

[2] The following facts are drawn from the Complaint and are presumed to be true for the purposes of this motion.

[3] *See id.* ¶¶ 8-10.

[4] *Id.* ¶ 11.

[5] *Id.* ¶ 18.

> It is the understanding of the parties that the Data shall be released each month as follows:
>
> 1. Thomson will send out the Data to Subscribers of its ultra-low latency distribution platform for purposes of algorithmic trading at approximately 9:54:58.00 (plus/minus 500 milliseconds).
>
> 2. Supplier shall release the certain Data (the "Headline Numbers") described in Exhibit_ attached hereto, via a telephonic conference call in which Subscriber may participate on or after 9:55:00, except that the monthly Headline Numbers shall not be disclosed on the conference call until 9:55:00 or later.
>
> 3. Thomson shall have the right to release the Data to its general Subscribers other than the subscribers in 1 above (i.e. generally its terminal base subscribers) on or after 9:55:00.
>
> 4. The Data shall be released to subscribing re-distributers, the general public and the website for Supplier and Thomson respectively at 10:00:00.[6]

In short, the tiered release of the Data provides a "bimonthly release of information to 'ultra low-latency' subscribers at 2 seconds before 9:55 a.m. followed by 'desktop' subscribers at 9:55 a.m., followed by release to the public at 10:00 a.m."[7]

Rosenblum learned that certain Thomson customers were receiving

---

6 *Id*. ¶ 24.

7 *Id*. ¶ 27.

access to the Product results as early as 9:06 a.m.[8] He alleges that the early release of the Product to certain subscribers gives those subscribers an advantage in making financial transactions based on the information.[9] In May 2012, Rosenblum formed the belief that the tiered release constituted insider trading.

**B. Reporting the Violation**

On May 14, 2012, Richard Curtin, the Product's author gave a presentation to Thomson employees. When Rosenblum asked if the tiered release of the Product results was a Fair Disclosure (Regulation FD) violation,[10] Curtin informed him it was not as the Product was "a private business venture and not governmental."[11] On May 16, 2012, Rosenblum alerted Marika Vilen, Global Head of Strategies, of his concerns and was told that it was an issue for the Thomson desktop sales force, but not for him.[12] On June 22, 2012, Rosenblum went to his supervisor, Rom Ramjug, V.P. of Partnerships, to discuss the situation.

---

8 *See id.* ¶ 30.

9 *See id.* ¶ 31.

10 *See* 17 C.F.R. § 243.100. Regulation FD prohibits a company from privately disclosing material nonpublic information regarding the company or its securities to certain persons such as analysts and institutional investors.

11 Compl. ¶ 34d.

12 *See id.* ¶ 34f.

Ramjug told him to "stop trying to figure out what Thomson [was] doing wrong, and close more business."[13] On June 25, 2012, another senior employee told Rosenblum "you are not doing yourself any favors by chasing down who is getting the numbers ahead of time – this will affect Nick's profits, and your bonus."[14]

On June 29, 2013, Rosenblum called the FBI to inform them of the early release of the Product results to certain consumers at 9:54:59 a.m. and also sent an email to Thomson's Ethics Committee.[15] That same day, Rosenblum informed Thomson that he had alerted the FBI. Between June 29, 2012 and August 3, 2012, Rosenblum spoke with his supervisors at Thomson as well as with the FBI about his conclusion that the early disclosure of the Product results violated Section 10b-5 of the 34 Act and Regulation NMS, "which regulates how companies, such as Thomson, share information with the public and is meant to ensure equal access to that information."[16] Rosenblum asserts that his reports to the FBI constituted a protected act under the DFA.

### C. Rosenblum Terminated After Reporting the Violation

---

[13] *Id.* ¶ 34i.

[14] *Id.* ¶ 34j.

[15] *See id.* ¶¶ 34l-34m.

[16] *Id.* ¶¶ 37-38

On August 3, 2012, weeks after Rosenblum complained to his superiors and alerted the FBI, he was terminated from his position with no severance pay and without compensation for his accrued vacation days.[17] Rosenblum maintains that before reporting the alleged violation, his job performance reviews were always exceptional and that he routinely received bonuses exceeding $100,000 per year.[18]

Although Thomson maintains that Rosenblum was fired based on his improper attempts at gaining commissions on sales contracts to which he was not entitled, Rosenblum believes he was terminated because of his reports to the FBI and Thomson's Ethics Board.[19] Rosenblum argues that the reasons given by Thomson for his termination are pretextual and issues that Rosenblum himself previously brought to the attention of his supervisors, but that they had dismissed as not problematic.[20] Because he reported the alleged violation to the FBI and internally at Thomson, Rosenblum argues he is a whitleblower within the definition of 15 U.S.C. § 78u and that his disclosures were a "protected activity"

---

[17] *See id.* ¶ 40.

[18] *See id.* ¶ 41.

[19] *See id.* ¶¶ 42-43.

[20] *See id.* ¶¶ 46-49.

under 15 U.S.C. § 784-6(h)(i)(A)(iii).

On April 4, 2013, Rosenblum filed the instant action. On August 20, 2013, upon retaining new counsel, Rosenblum filed an amended complaint. Rosenblum states that as a result of his unlawful termination, he has suffered "the loss of a career, and the loss of twice his salary, bonuses, benefits, and other compensation which employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, physical pain and suffering, inconvenience, injury to his reputation, loss of enjoyment of life, and other non-pecuniary losses."[21]

## III. APPLICABLE LAW

### A. Rule 12(b)(6) - Failure to State a Claim

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court "must accept all non-conclusory factual allegations as true and draw all reasonable inferences in the plaintiff's favor."[22] The court then "determine[s] whether [those allegations] plausibly give rise to an entitlement for relief."[23] "Threadbare recitals

---

[21] *Id.* ¶ 61.

[22] *Simms v. City of New York*, 480 Fed. App'x 627, 629 (2d Cir. 2012) (citing *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008)).

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010), *aff'd*, 133 S.Ct. 1659

of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[24] The court then "determine[s] whether [those allegations] plausibly give rise to an entitlement for relief."[25] A claim should not be dismissed if the plaintiff has stated facts sufficient to state a claim to relief that is plausible on its face.[26] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27] Plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[28]

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents

---

(2013).

[24] *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[25] *Id*. at 679. *Accord Kiobel*, 621 F.3d at 124.

[26] *See Simms*, 480 Fed. App'x at 629 (citing *Iqbal*, 556 U.S. at 677).

[27] *Iqbal*, 556 U.S. at 678.

[28] *Id.* (quotation marks omitted).

incorporated by reference in the complaint."[29] However, a court may also consider a document, not incorporated by reference, "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[30]

## IV. DISCUSSION

Thomson contends that Rosenblum is not covered under the Securities Whistleblower Incentives and Protection provisions of the DFA because he never contacted the SEC to report Thomson's alleged misconduct. The DFA provides the following protection against whistleblower retaliation:

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower--
>
> (i) in providing information to the Commission in accordance with this section;
>
> (ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or
>
> (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et

---

[29] *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[30] *Id*. (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). *Accord Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

> seq.), this chapter, including section 78j-1(m) of this title, section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.[31]

The DFA defines a whistleblower as "any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission."'[32] Rosenblum and Thomson disagree about how to reconcile the DFA's definition of "whistleblower" with the DFA's retaliation provision. More specifically, the question is whether disclosure to the SEC is required in order to qualify for the anti-retaliation protection of the DFA.

**A. Statutory Interpretation of the DFA Shows Ambiguity**

In 2011, the SEC formally adopted a rule to provide clarity as to the interplay between the DFA's definition of whistleblower and the anti-retaliation provision:

> For purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of the Exchange Act (15 U.S.C. § 78u–6(h)(1)), you are a whistleblower if:
>
> (i) You possess a reasonable belief that the information you are providing relates to a possible securities law violation (or, where applicable, to a possible violation of the

---

[31] 15 U.S.C. § 78u–6(h)(1)(A).

[32] *Id.* § 78u–6(a)(6).

> provisions set forth in 18 U.S.C. §1514A(a)) that has occurred, is ongoing, or is about to occur, and;
>
> (ii) You provide that information in a manner described in Section 21F(h)(1)(A) of the Exchange Act (15 U.S.C. § 78u–6(h)(1)(A)).
>
> (iii) The anti-retaliation protections apply whether or not you satisfy the requirements, procedures and conditions to qualify for an award.[33]

To determine whether the SEC's interpretation of a statute warrants deference, a court applies the two-step process of statutory interpretation established by *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc*.[34] The first step inquires "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."[35] However, if "the statute is silent or ambiguous with respect to the specific issue," the court applies step two – "whether the agency's answer is based on a permissible construction of the statute."[36] "If the agency interpretation is reasonable, then [a court] must defer to it."[37]

---

33 17 C.F.R. § 240.21F-2.

34 467 U.S. 837 (1984).

35 *Id*. at 842-43.

36 *Id.* at 843.

37 *Kar Onn Lee v. Holder*, 701 F.3d 931, 936 (2d Cir. 2012)

Thomson contends that because neither the Second Circuit nor the Supreme Court have addressed the precise issue presented here, this Court should follow the Fifth Circuit's decision in *Asadi v. G.E. Energy (USA), L.L.C.*[38] In *Asadi*, plaintiff charged his former employer with violating the DFA by firing him in retaliation for internally reporting a possible violation of the securities laws.[39] Asadi informed his supervisor and his company's regional ombudsperson of the suspected violation.[40] The Court held that Asadi was not a whistleblower under the DFA because he did not report the possible violation to the SEC.[41] The Court declined to give deference to the 2011 SEC rule, as it determined that Congress's intention to limit whistleblower protection to those who reported the violation to the SEC was unambiguous. Thomson argues that for the reasons articulated in *Asadi*, Rosenblum is not entitled to relief because the plain text of the statute requires that a whistleblower report a suspected violation to the SEC in order to obtain protection against retaliation under the Act. Rosenblum, in turn, argues that

---

[38] 720 F.3d 620 (5th Cir. 2013).

[39] *See id.* at 621.

[40] *See id.*

[41] *See id.* at 629.

several recent district court decisions, including some within the Second Circuit,[42] have found that Congress did not intend such a narrow interpretation of the DFA.[43]

When considering the DFA as a whole, it is plain that a narrow reading of the statute requiring a report to the SEC conflicts with the anti-retaliation provision, which does not have such a requirement. Thus, the governing statute is ambiguous.[44] As a result, it is appropriate to consider the SEC's interpretation of the statute.[45]

> In its comments to the rule, the SEC explained further that '[t]he second prong of the Rule 21F–2(b) (1) standard provides that, for purposes of the anti-retaliation protections, an individual must provide the information in a manner described in Section 21F(h)(1)(A). This change

---

42 *See, e.g., Murray v. UBS Secs., LLC*, No. 12 Civ. 5914, 2013 WL 2190084, at *7 (S.D.N.Y., May 21, 2013), *Kramer v. Trans–Lux Corp.*, No. 11 Civ. 1424, 2012 WL 4444820, at *3 (D. Conn. Sept. 25, 2012); *Egan v. Tradingscreen, Inc.*, No. 10 Civ. 8202, 2011 WL 1672066, at *3 (S.D.N.Y. May 4, 2011). It should be noted that each of these cases were decided before *Asadi*.

43 *See Ellington v. Giacoumakis*, No. 13 Civ. 11791, 2013 WL 5631046, at *3 (D. Mass. Oct. 16, 2013), which declined to give deference to *Asadi*'s statutory interpretation, stating "[t]his court respectfully disagrees and instead adopts the SEC's interpretation of the relevant provisions of Dodd–Frank."

44 *See Virgilio v. City of New York*, 407 F.3d 105, 112 (2d Cir. 2005) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)) ("'The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'").

45 *See Ellington*, 2013 WL 5631046, at *4.

> to the rule reflects the fact that the statutory anti-retaliation protections apply to three different categories of whistleblowers, and the third category includes individuals who report to persons or governmental authorities other than the Commission.'[46]

Therefore, the 2011 rule promulgated by the SEC, which was given authority by Congress to implement the DFA, does not require a report to the SEC in order to obtain whistleblower protection.

**B. Applicability of the Sarbanes–Oxley Act ("SOX")**

To obtain relief under the SEC's rule "the anti-retaliation whistleblower protection provisions of Dodd–Frank require Plaintiff to show that he either provided information to the SEC or that his disclosures fell under the four categories listed in Section 78u–6(h)(1)(A)(iii)."[47] The SOX provides whistleblower protection for employees of publicly traded companies if

> any officer, employee, subcontractor, or agent . . . discharge[s], . . . threaten[s], [or] harass [es], . . . an employee in the terms and conditions of employment because of any lawful act done by the employee—
>
> (1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes

---

[46] *Murray*, 2013 WL 2190084, at *3 (quoting *SEC Securities Whistleblower Incentives and Protections*, 76 Fed. Reg. 34300–01, at *34304, 2011 WL 2293084 (2011) ("Comments to Final Rule")).

[47] *Id.* at *7.

> constitutes a violation of any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by—
>
> (A) a Federal regulatory or law enforcement agency;
>
> (B) any Member of Congress or any committee of Congress; or
>
> (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct). . . .[48]

Rosenblum has alleged that he reported the violation to both the FBI and internally to his supervisors. At this stage, Rosenblum has adequately alleged that Thomson's decision to terminate him was motivated, in part, by reporting the alleged violations that are protected by Section 806 of the SOX, and has thus plausibly stated a claim under Section 78u–6(h)(1)(A)(iii). Accordingly, Thomson's motion to dismiss is denied.

**C. Punitive Damages**

Finally, Thomson argues that even if its motion to dismiss is denied, Rosenblum is not entitled to punitive damages under the DFA. The DFA provides the following relief under the retaliation provision: "reinstatement;" "2 times the amount of back pay otherwise owed to the individual, with interest;" and

---

[48] 18 U.S.C. § 1514A.

"compensation for litigation costs, expert witness fees, and reasonable attorneys' fees."[49] Thomson contends that Rosenblum is precluded from recovering punitive damages because the DFA's anti-retaliation provision does not provide for such relief.

When interpreting other statutes, courts have found that punitive damages are available even when not explicitly provided for in the statute. However, those statutes provided for 'special damages' or 'legal relief that the Court deems appropriate,' which courts construed to include punitive damages.[50]

---

[49] 15 U.S.C. § 78u–6(h)(1)(C).

[50] *See Sines v. Service Corp. Intern*., No. 03 Civ. 5465, 2006 WL 3247663, at *2 (S.D.N.Y. Nov. 8, 2006) (holding that the Fair Labor Standards Act permits recovery of punitive damages in anti-retaliation actions even though it is not specifically authorized because the statute was amended to permit recovery of any "such legal or equitable relief as may be appropriate, including without limitation employment reinstatement or promotion and the payment of wages lost and an additional amount of liquidated damages." The court held that "such legal or equitable relief . . .without limitation" indicated Congress's intent to allow a panoply of remedies, including punitive damages). *See also Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 264 (S.D.N.Y. 2008) ("[A] plaintiff who prevails under the anti-retaliation provision of the FLSA may be awarded 'such legal or equitable relief as may be appropriate . . . including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damage', 29 U.S.C. § 216(b), and possibly punitive damages."). *Cf. Edwards v. Brookhaven Science Associates, LLC*, 390 F. Supp. 2d 225 (E.D.N.Y. 2005) (stating that punitive damages are available for retaliation claims under the Americans with Disabilities Act because that Act incorporates remedies available under Title VII, even though the Title VII provision is ambiguous as to whether it applies to other statutes).

Because the DFA neither provides for punitive damages nor permits broader relief, Rosenblum's claim for such damages is dismissed.[51]

## V. CONCLUSION

For the foregoing reasons, Thomson's motion to dismiss for failure to state a claim is denied. The Clerk of the Court is directed to close the instant motion (Docket No. 19). A status conference is scheduled for November 26, 2013 at 4:30 p.m.

---

[51] *See Kramer*, 2012 WL 4444820, at*7 ("The Dodd–Frank Act provides that relief under the retaliation provision includes 'reinstatement;' '2 times the amount of back pay otherwise owed to the individual, with interest;' and 'compensation for litigation costs, expert witness fees, and reasonable attorneys' fees.' 15 U.S.C. § 78u–6(h)(1)(C). Kramer will be limited to that relief, and the motion to strike is granted to the extent it sought to limit Kramer's prayer for relief to damages permitted by ERISA and the Dodd Frank Act."). *See Also* William E. Hartsfield, 2 Investig. Employee Conduct, § 12:35 ("Dodd-Frank Wall Street Reform and Consumer Protection Act") (2001, revised Aug. 2013) ("DFA does not provide for recovery of punitive damages."); Duane Morris LLP, Alerts, SEC Adopts Final Rules on Dodd-Frank Whistleblower Program (Jun. 8, 2011), available at http://www.duanemorris.come/alerts/SEC_Dodd-Frank_whistleblower_rules_4100.html (. . . . Sarbanes-Oxley, like Dodd-Frank, does not provide for punitive damages.").

SO ORDERED:

_______________________

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
October 25, 2013

**- Appearances -**

**For Plaintiff:**

Eric L. Young, Esq.
Young Law Group, P.C.
123 S. Broad Street, Suite 1920
Philadelphia, PA 19109
(215) 367-5151

Edward J. Kennedy, Esq.
Phillips & Associates, PLLC
30 Broad Street
35th Street
New York, NY 10004
(212) 248-7431

James J. McEldrew, III, Esq.
McEldrew Law
123 South Broad Street, Suite 2135
Philadelphia, PA 19109
(215) 545-8800

**For Defendant:**

Glenn C. Edwards, Esq.
Justin E. Klein, Esq.
James F. Rittinger, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, NY 10169
(212) 818-9200